FILED
2023 Nov-14  PM 03:20
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

FILED

2023 NOV 14  P 2: 29

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| WILLIAM M. PICKARD, III, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN PRIDE PROPERTIES, LLC; | ) |
| SPM PROPERTY MANAGEMENT, LLC, | ) |
| a.k.a. SPM. Inc., a.k.a. SPM LLC; | ) |
| TIFFANY CONE, personally and in | ) |
| her capacities with American Pride | ) |
| Properties, LLC and Terra Echelon, | ) |
| LLC; TODD MINER, personally and | ) |
| in his capacity as attorney for American | ) |
| Pride Properties, LLC; DOUGLAS Q. | ) |
| GALE, personally and in his capacities | ) Case No. 2:23cv1545-AMM |
| with American Pride Properties, LLC | ) |
| and Terra Echelon, LLC; MEGAN L. | ) Related Case Nos.: |
| SOUTHERN, personally and in her | ) 2:19-cv-00885-ACA and |
| capacity as attorney for American | ) 2:20-cv-00212-ACA |
| Pride Properties, LLC; SONISHARI | ) |
| BELLAMY, personally and in her | ) |
| capacity with American Pride | ) |
| Properties, LLC; JANE DOE, | ) |
| personally and in her capacity as | ) |
| Agent and Realtor for Tiffany Cone | ) |
| et al.; TERRA ECHELON, LLC; | ) |
| Fictitious Defendants A-M who | ) |
| caused or contributed to the injuries | ) |
| herein complained of, | ) |
| Defendants. | ) |

## COMPLAINT
### For Settlement Breach, F.H.A./F.H.A.A. And Section 1983 Violations, And For A Temporary Restraining Order

# I.   **Preliminary Statement**

1.   This is a complaint for relief from the breach of the settlement agreement in case nos. 2:19-cv-00885-ACA and 2:20-cv-00212-ACA in this District and for related injuries from violations of the Federal Housing Act ("FHA") and Federal Housing Act Amendments of 1988 ("FHAA")[1] and 42 U.S.C. §1983.

2. Plaintiff further prays urgently for a Temporary Restraining Order to avert pending, immediate, devastating and irreparable harms from being ejected from the Property in violation of his rights under the FHAA and Section 1983, and where all three exceptions to the Anti-Injunction Act and the exception to *Younger* Abstention apply and allow a federal order to enjoin state court proceedings

3. Plaintiff has a positive and unblemished history (spanning 47 years) of landlord-tenant relationships with the one exception of his tenancy at Highland Manor Apartments managed by Defendant SPM Property Management, LLC, a.k.a. SPM, Inc., a.k.a. SPM, LLC (hereinafter "SPM").

4. Plaintiff filed said case nos. 2:19-cv-00885-ACA and 2:20-cv-00212-ACA (hereinafter the "related Cases") against Highland Manor, SPM, and other defendants. This case was settled pursuant to a settlement

---

[1] The acronym "FHAA" shall refer in all future instances in this Complaint to the Fair Housing Act and the Fair Housing Act Amendments of 1988.

agreement that included the confidentiality term that the Defendants in this action would not give any negative or derogatory reference but would limit the dissemination of information to the dates of Plaintiff's tenancy (see copy of letter of reference agreed to attached as Exhibit "A".) Defendant SPM breached this agreement by giving highly derogatory information to other Defendants in this action that could have only originated from SPM. Plaintiff is suffering devastating, immediate and irreparable injuries with further irreparable injuries pending including verifiably unjust and unlawful ejectment from his home absent injunctive relief.

5. This is a grievous continuation of intentional, verifiable, and invidious discrimination and harms and retaliation against the Plaintiff under the FHAA and Section 1983. This is a nightmare for the Plaintiff who has only sought affordable housing by which to live in quiet enjoyment without the onslaught of vicious discrimination and retaliation, where the weight and force of the Defendants' collective juggernaut is extraordinarily difficult for a disabled individual without such resources and means to overcome. Plaintiff's only hope from this ordeal and imminent devastation lies with this cause of action. Plaintiff is fortunate and grateful to live in this country that has a Constitution that protects all persons and entities, large and small, where he can petition for redress of grievances and be heard.

## II.   **Jurisdiction and Venue**

6. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(4), 42 U.S.C. § 3613(a)(1)(A), and 42 U.S.C. § 1983.

7. The Court further has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because those claims are inextricably intertwined with his federal law claims and arise out of a common nucleus of related facts. Hence they form part of the same case or controversy under Article III of the U.S. Constitution.

8. Venue is proper in this District and Division pursuant to 28 U.S.C. §§ 81 and 1391(b)(2).

## **III. Parties**

9. The Plaintiff is William Marshall Pickard III who is an adult resident of Jefferson County, Alabama, whose physical address is 4825 Clairmont Avenue South, Birmingham, Alabama 35222 and whose mailing address is P.O. Box 101, Birmingham, AL 35201.

10. Defendant American Pride Properties, LLC ("APP"), upon all information and belief, is a Delaware limited liability company registered to conduct business in Alabama and can be served upon its registered agent, CT Corporation System, 2 North Jackson Street Suite 605, Montgomery, AL 36104. American Pride Properties, LLC is sued in its business capacity and

[4]

in its capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

11. Defendant SPM, upon all information and belief, is an Alabama Limited Liability Company who can be served upon its registered agent, William B. Welden, 1103 Richard Arrington Jr Blvd S., Birmingham, AL 35205. SPM is sued in its business capacity and in its capacity as a state actor pursuant to case no. 2:20-cv-00212-ACA.

12. Defendant Tiffany M. Cone, upon all information and belief, is an adult resident of the State of Florida whose address is 225 S. Westmonte Drive, Suite 3050, Altamonte Springs, Florida 32714, and whose mailing address is 3716 E. Heartleaf Ct, Boise, ID 83716. She is sued in her individual capacity, her capacity as Vice-President of and "attorney in fact" for American Pride Properties, LLC, as Vice-President of Terra Echelon, LLC., and in her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

13. Defendant Todd Miner, upon all information and belief, is an adult resident of the State of Alabama whose address is 2850 19th St S Suite 370, Homewood, AL 35209. He is sued in his individual capacity, his capacity as attorney for Defendant American Pride Properties, LLC, and his capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212.

14. Defendant Douglas Q. Gale, upon all information and belief, is an adult resident of the State of Florida whose address is 225 S. Westmonte Drive, Suite 3050, Altamonte Springs, Florida 32714, and whose mailing address is 3716 E. Heartleaf Ct, Boise, ID 83716. He is sued in his individual capacity, his capacity as President of American Pride Properties, LLC, President/Manager of Terra Echelon, LLC, and his capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

15. Defendant Megan L. Southern, upon all information and belief, is an adult resident of the State of West Virginia whose address is 325 Eighth Street, Huntington, WV 25701. She is sued in her individual capacity, her capacity as attorney for American Pride Properties, LLC during the relevant times stated in this Complaint, and her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

16. Defendant Sonishari T. Bellamy, upon all information and belief, is an adult resident of the State of Florida whose address is 14767 Clarkson Drive, Orlando, FL 32828.  She is sued in her individual capacity, her capacity as Asset Manager for American Pride Properties, LLC during the relevant times stated in this Complaint, and in her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

17. Jane Doe, whose identity is unknown at present, is identified by Defendant Tiffany Cone as her agent and realtor. As such her identity can be

ascertained from Defendant Cone and she can be served at the address of her principal, Defendant Tiffany Cone, at 225 S. Westmonte Drive, Suite 3050, Altamonte Springs, Florida 32714, who is sued in her individual capacity, her capacity as agent and realtor for Tiffany Cone, and in her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

18. Defendant Terra Echelon, LLC, upon all information and belief, is a Florida limited liability company who can be served upon its registered agent, Douglas Q. Gale, at 225 S. Westmonte Drive, Suite 3050, Altamonte Springs, FL 32714. Terra Echelon, LLC, is sued in its business capacity and in its capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

19. Fictitious Defendants A through M are individuals or entities who caused or contributed to the injuries and damages complained of in this Complaint whose identities are unknown at present but will be supplied by amendment when ascertained.

## IV. Facts

20. For 47 years, Plaintiff has had good and unblemished relationships with landlords with one exception, Defendant SPM, LLC.

21. On March 13, 2019, Plaintiff rented an apartment at Highland Manor, Birmingham, Alabama, managed by Defendant SPM.

22. Soon after moving in to this apartment, Plaintiff became embroiled in conflicts and disputes with SPM, *et al.* that resulted in litigation from June 10, 2019 until February 18, 2021 when the case was settled.

23. Under the settlement terms, the Plaintiff would vacate the apartment with specific provisions under the settlement by which he could secure other housing.

24. The Defendants in this action promised confidentiality including specifically a "neutral reference" regarding Plaintiff's tenancy. Plaintiff was concerned that the defendants would unjustifiably give derogatory information regarding his tenancy that could greatly impair if not obstruct efforts to find future housing. The defendants agreed to only disclose dates of occupancy as set out in the letter of reference in this regard (Exhibit "A").

25. Plaintiff focused on three options to find subsequent housing: (1) another subsidized property, (2) a leased property that he could share if necessary and thus afford; and (3) a property to purchase that he could share if necessary and thus afford.

26. After researching and seeking out numerous such properties, he found a home for sale located at 4825 Clairmont Avenue South, Birmingham, Alabama (hereinafter the "Property"). This home was a tax sale property that was in need of substantial renovations.

[8]

27. The home had three bedrooms and three living areas upstairs and a large two room, full bath 'mother-in-law' section downstairs.

28. Plaintiff had to find other housing by March 29, 2021 and this was the only viable option that he could find within this time frame.

29. On March 9, 2021, Plaintiff signed a contract with the Seller, Defendant American Pride Properties, LLC ("APP") at a purchase price of $255,000.00 (hereinafter the "Contract") (copy of Contract attached as Exhibit "B".)

30. The Contract gives him possession of the home and allows him to make renovations to increase the value and equity in the home.

31. The Contract is also assignable should this be the best option to close on the home. If he could increase the equity sufficiently for a reverse mortgage, he would have a home to live in for the rest of his life without a monthly payment, and even better, positive income from sharing the home. Or, he could assign the contract on terms that would allow him to share the home.

32. There were, however, two main risk factors in contracting to buy the home. First, the quiet title action was still pending and the Seller did not yet have clear title to the property, and there was no assurance that as to if and when they might get title. Second, the home had foundation problems

and it was not certain as to whether the home would pass inspection by a prospective lender, especially a HUD lender.

33. Plaintiff and the Seller, APP, thus agreed in the Contract that closing would be contingent upon clearing title and final approval and scheduling of financing (see paragraph 4 of the Contract, Exhibit B).

34. After reviewing all factors and advices given to him, it was not likely that the equity would increase enough to obtain a reverse mortgage although the equity would likely increase as much as double or more resulting from the renovations paid from his funds on hand. Plaintiff decided that his best option was to assign the Contract to a buyer who would lease back to him a room or the lower section of the house at an affordable cost. He would also have substantially more if not double or more of his funds on hand should he need to pursue other housing options.

35. On July 15, 2021, the property appraisal was issued valuing the property at $355,000.00 that was $100,000.00 more than Plaintiff's Contract price. Quiet title had been granted, but not yet recorded as required to vest title, and the foundation inspection had been passed. Plaintiff has made major renovations that total more than $31,000.00.

36. It was also at this point that the Seller, APP, began efforts to renege on the Contract. APP tried to get Plaintiff to agree to impossible terms for

closing and to set a time for the expiration of the Contract, which Plaintiff refused to do.

37. On August 26, 2021, APP unilaterally declared the Contract to be void. The statute of frauds required that any such agreement be made and agreed to in writing by both parties, and Plaintiff did not agree to any voiding of the Contract. Under the statute of frauds, the Contract remains in full force and effect and so remains to the present.

38. Plaintiff obtained representation from attorney Jeff Holmes who assisted him and his assigned buyer pro bono. APP began efforts to make Plaintiff the issue rather than their ineptitude and obligations and binding agreement under the Contract, in prima facie and flagrant violation of the FHAA, et al.

39. Defendants Cone, APP, et al. incredulously claim that as persons and entities whose business is real estate transactions, that they do not read their contracts by admitting that they did not read the term that the Contract was assignable, or other Contract terms. They instead attempt to make Plaintiff the issue rather than their ineptitude and obligations and binding agreement under the Contract, in prima facie and flagrant violation of the FHAA, et al.

40. In the Contract, they gave possession of the property to the Plaintiff, then claimed that they only gave him "access" that is contradicted by the Contract that gives him possession of the property.

41. Defendants Cone, Gale, Bellamy, Doe, et al., are persons whose business is engaging in residential real-estate related transactions. Defendants APP and Terra Echelon are entities whose business is engaging in residential real-estate related transactions.

42. Defendants Miner and Southern are attorneys representing APP regarding their real estate transactions.

43. Indeed, Defendant Cone states that they "close hundreds of properties a year."

44. Yet, as an entity engaged, *inter alia,* in selling "hundreds of properties a year," they purport that they do not have to read their contracts and they attempt to blame the Plaintiff for their alleged failure to read the Contract in this case, primarily the assignability term in the Contract. They claim to be so thoroughly experienced, but apparently they are unaware that in Alabama and many jurisdictions, a contract is assignable unless it is designated otherwise. They claim that they do not allow their contracts to be assignable. They admit that the Contract that they drafted in this case is their standard contract, but yet it does not state that it is not assignable, hence it is assignable, even without the Plaintiff's specification that it is assignable.

[12]

Defendants impeach their own claims, again, by alleging some issue with the assignability of the Contract, and by attempting to make Plaintiff the issue rather than their ineptitude and obligations and binding agreement under the Contract, in prima facie and flagrant violation of the FHAA, et al.

45. Yet again, they make the vague allegation that somehow the Plaintiff was remiss and was attempting some form of subterfuge in specifying that the Contract was assignable, even though they cannot identify any prejudice or detriment. They were obligated to sell under the Contract terms regardless as to who the buyer was, Plaintiff or his assignee. They continued their efforts to make Plaintiff the issue, rather than their own inept incompetence and their contractual obligations and binding agreement under the Contract, in prima facie and flagrant violation of the FHAA, et al. (see the letter from Defendant Southern attached as Exhibit "C".)

46. Even if their false allegations were true, there was no detriment or adverse effect even if APP et al. did not know of the assignment even until the day of closing.  As in all closings, the closing agent explains the transaction to all parties. It would make no difference as to whether there was an assigned buyer as long as the sale proceeds agreed upon per the Contract were disbursed to the seller, APP.

47. APP et al. failed to identify any prejudice or detriment that might result from an assignment. Again, they attempt to make Plaintiff the issue

[13]

rather than their ineptitude and obligations and binding agreement under the Contract, in prima facie and flagrant violation of the FHAA, et al.

48. Between August 26, 2021 and December 7, 2021, Mr. Holmes made concerted efforts to mediate the matter. He obtained a verbal commitment to sell from defendant Southern, then attorney for APP, for a price of $270,000.00. They then breached this agreement.

49. On September 13, 2021, Mr. Holmes arranged a conference call with Defendant APP that was joined by Defendants Cone and Gale. Defendant Gale made derogatory remarks that continued Defendants' efforts to make Plaintiff the issue, not their ineptitude, obligations and binding agreement under the Contract, in prima face and flagrant violation of the FHAA et al.

50. On October 20, 2021, defendant Southern presented a written offer to sell at a price of $280,000.00. They then breached the agreement to close at this price. Southern disparaged Plaintiff (see Exhibit C) and continued APP's efforts to make Plaintiff the issue, not their ineptitude, obligations and binding agreement under the Contract, in prima face and flagrant violation of the FHAA et al.

51. On October 20, 2021, Defendants Cone and Doe attempted to unlawfully remove and lock Plaintiff out of the Property that they had given him possession of.

[14]

52. On December 7, 2021, in an outrageous letter by Defendant Miner, he stated in writing and admitted that Defendant APP was refusing to sell in unlawful, flagrant and prima facie violation of the FHAA, Section 1983, et al., to wit:

"Further investigation revealed a lengthy criminal and litigious history on the part of Mr. Pickard. At that point, APP made the decision to cease further negotiations as to any potential new Agreement."

53. Title 42 U. S. C. §3604(a) specifically states that it is unlawful to refuse to sell or rent, including to **negotiate** for the sale or rental of a dwelling based on an individual's protected status including a buyer's disability, and also based on arbitrary or blanket criminal-based criteria or restrictions in the sale or rental or negotiation for the sale or rental of a dwelling as set out in detail below.

54. On April 25, 2023, Defendant Cone continued this discrimination and stated that the means by which they conducted such an 'investigation' was by **"a google search"** (Emphasis added.) Based on this "google search", Defendants halted negotiations and refused to sell to the Plaintiff. There could be no more flagrant discrimination and violations of the FHAA that is ongoing and continues to the present date.

55. A seller may not discriminate against a buyer because the seller does not like the buyer, or because of the buyer's disability, and even because

[15]

of arbitrary or blanket criminal-based criteria or restrictions placed against the buyer.

### Plaintiff's Background and Legal History
### Inescapably Informs That He is Disabled

56. Had the defendants done what they were obligated to do, and what they said that they had done in investigating Plaintiff's background and legal history, they would have immediately found that he was disabled from the most recent legal history records, including criminal charges that were the result of his mental health disability and that were mitigated based on his disability including repeated findings of incompetence to stand trial and compromised mental state.

57. Plaintiff suffers from a life-long, severe, chronic and disabling mental illness. From age 5, he has suffered crippling episodes of acute depression and mania that has resulted in devastating trauma for him not the least of which have been criminal charges, which again have been mitigated due to repeated findings of incompetence to stand trial and compromised mental state. However, even without such mitigation, Defendants flagrantly violated the FHAA that proscribes discrimination based on arbitrary or blanket criminal-based criteria or restrictions in the negotiations for and the sale or rental of housing as set out in more detail below.

58. Defendants further characterize him as "litigious." First, this is a frivolous claim regarding any valid reason to refuse to negotiate for, sell or rent a dwelling. Moreover, the cases brought by Plaintiff have proceeded as meritorious without exception including positive outcomes. The right to petition for redress of grievances is enshrined in the Bill of Rights. Courts hold that this right should not be abridged without just cause, such as the abuse of the right by the repeated filing of frivolous and abusive process. Again, that is far from the case here, and there is no just cause to abridge his Constitutional rights, nor does this claim find any basis in statute, rule, regulation, case law, precedent or other authority, and certainly no basis to discriminate against the Plaintiff.

59. Second, the last previous litigation that he filed were the related Cases in this Court for discrimination based on his mental health disability, cases that resulted in positive outcomes. Had they ascertained this most recent record alone, versus a "google search", they would have ascertained his disability.

60. This further establishes that their google search was inept and incompetent and his disability could have readily have been ascertained from this record pursuant to the duty of any person or entity engaged in the selling or renting, including negotiations for the selling or renting dwellings not to discriminate under the FHAA.

[17]

61. Under these facts, it is undeniable that the Defendants' refusal to negotiate for sale and to sell as obligated under the Contract for sale constitute acts of discrimination under the FHA, FHAA, Section 1983. et al.,

62. Section 805(a) of the FHA states that "It shall be unlawful for any person or other entity whose business includes engaging in real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." Title 42 U.S.C. §3605(a). Defendant APP is an entity whose primary business is in engaging in real-estate and real-estate related transactions, and they have admittedly discriminated against the Plaintiff in violation of this law.

63. This specifically includes negotiations for the sale of property as well as the sale itself. Title 42 U. S. C. §3604(a) states that it is unlawful based on such protected characteristics "To refuse to sell or rent after the making of a bona fide offer, **or to refuse to negotiate for the sale or rental** of, or otherwise make unavailable or deny, a dwelling to any person."[2] Defendants have admittedly discriminated against the Plaintiff due to his handicap and disability in violation of this law as well, even stating in writing

---

[2] The Fair Housing Amendments Act of 1988 (FHAA) amended the FHA to make it unlawful to discriminate specifically on the basis of disability.

[18]

that they refused to sell and refused to negotiate for the sale of the dwelling based on their violations of the FHA.

### There was no valid premise to refuse to negotiate and sell To Plaintiff based on background and legal history

64. As stated above, a competent investigation of Plaintiff's background and legal history reveals that he is disabled, hence the FHAA proscribes discrimination by the refusal to negotiate and sell to Plaintiff, that Defendants have clearly, admittedly and thus undeniably done, incredibly affirmed in writing by Defendant Miner (see letter attached as Exhibit "D").

### Even if Plaintiff had a criminal history standing alone, without disability, Defendants violated the FHAA

65. Even assuming, arguendo, that the consideration was criminal history alone, federal rules and regulations proscribe the arbitrary consideration of criminal history as lawful in refusing to rent or sell under the FHAA.

66. On April 4, 2016, the U.S. Department of Housing and Urban Development ("HUD") promulgated the "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions" in which they advised that creating arbitrary or blanket criminal-based criteria or restrictions in the negotiations for and the sale or

[19]

rental of housing, without determining nondiscriminatory factors, violates the FHAA.

67. The Supreme Court had just issued the opinion in *Texas Dep't of Housing v. Inclusive Comtys Project,* 135 S.Ct. 2507 (2015) holding that disparate impact claims are cognizable under the Fair Housing Act. While persons with criminal records are not a protected class under the FHA, criminal history-based barriers to housing that have a disparate and disproportionate impact on a protected class under the Act constitutes discrimination in violation of the FHA.

68. Statistics overwhelmingly establish that persons with disabilities disproportionately suffer disparate impact in the criminal justice system. Research published in the November, 2017 edition of the *Journal of Public Health,* found that an astonishing 40 percent of the caucasian population with disabilities had been arrested by age 28, and that caucasians with disabilities arrested by age 28 have a 30.60% increased probability of arrest compared with caucasians without disabilities as cited in in their December, 2017 edition.  This research further found that the types of disability were evenly distributed across all races.

69. Statistics also confirm that persons with disabilities are overrepresented in all interactions with the criminal justice system, and at all points, that system is failing them. The Center for American Progress

[20]

released a Report in 2016 that provides a strong overview of the ways that disabled people suffer prejudice and are failed by the criminal justice system "from policing to courts to incarceration." The Report confirms that the disabled represent a disproportionate number of those stopped and arrested. This is partially because, as the ACLU of Southern California and the Bazelon Center for Mental Health Law report, the "war on drugs" and other mass incarceration policies criminalize behaviors related to disability to include mental health symptomology, substance use (which is often a method of self-medication), homelessness (as of 2015, the Department of Housing and Urban Development estimated that 78% of people in shelters had a disability), and atypical reactions to social cues (which may be interpreted as aberrant or "disorderly conduct"). Societal attitudes towards the disabled and the intersections of related factors contribute to their criminalization.

70. As advised by HUD's General Counsel, those who sell or rent property and reject persons based on criminal history do so at their peril if they fail in their duty and obligation to ascertain and base such decisions on nondiscriminatory factors when implementing criminal history policies or practices used to make housing decisions and where they deploy arbitrary or blanket criminal-based policies or restrictions that result in discrimination including by disparate impact and disparate treatment under the FHAA.

71. It is a manifest fact that the internet is riddled with false, inaccurate, often scandalous and unjustly harmful information. Perhaps the worst way to check someone's background and legal history would be through a google search. Yet this is exactly what Defendants did. In light of the Defendant's ineptness, incompetence, negligence and disregard for the rule of law such as that which applies in this case, Defendants' discriminatory conduct is made more intentional and severe by this negligence and malice.

72. Moreover, defendants "googled" the matter when the definitive facts were also available at their fingertips, particularly court records including the related Cases adjudicated by this court.

Miner further writes that:

> "take a look at your client's legal history; he repeatedly ties up property owners and lives in the subject property without permission during the dispute."

73. Miner states facts that are verifiably false and that further establish his prima facie and flagrant violations of the FHA, FHAA, et al., and his collusion with Defendant SPM, et al., in the denial of these rights.

74. As stated above, the Plaintiff, in his 47 year history regarding his tenancies, has a positive and unblemished record, except his conflict with Defendant SPM. And in this case, he did not "tie up" the leased, subject property. He occupied it pursuant to his lease and rights as a tenant and was

**never** dispossessed of these rights. He did not 'live in the subject property without permission during the dispute.' He lived in the property under his rights as a tenant and paid rent faithfully into the court for the entire duration of the dispute. Plaintiff's record establishes that he has never so encumbered a property and especially, he has not "repeatedly" done so as falsely and outrageously alleged.

75. This brings us to perhaps the most singularly grievous element. The only source in Plaintiff's record for these alleged claims of 'repeated' landlord-tenant conflict is from the conveyance of negative information from Defendant SPM in violation of paragraph 8 of the settlement agreement in case numbers before this Court. It is inescapable that derogatory information was conveyed by SPM to APP including such allegations of repeated landlord-tenant conflicts where the Plaintiff is alleged to have 'tied up' property owners and occupied their properties without permission during the disputes. Except for SPM, Plaintiff has an unblemished history with landlords, hence the only landlord who could be the source of such drastically derogatory information is SPM. This allegation is extremely inflammatory and injurious, and verifiably false.

76. These injuries have been greatly compounded by Defendant APP who filed to eject him. Notwithstanding that this ejectment is on appeal, Defendant APP has obtained an ejectment order. Plaintiff has been served

[23]

with an ejectment notice (see copy of notice attached as Exhibit "E") and is in immediate jeopardy at any time of the most severe devastation and irreparable injury of being ejected in flagrant violation of his rights under the FHAA and Section 1983.

77. As set out in his concomitant motion for a Temporary Restraining Order, this is a rare case where all three exceptions to the Anti-Injunction Act apply and the prohibitions of *Younger* abstention do not apply, hence injunctive relief is warranted and essential where Plaintiff will suffer immediate devastating and irreparable injuries without a restraining order and the court would be unable to accord meaningful relief in this cause or protect its judgments.

78. The Defendants have admitted in writing that they are discriminating against the Plaintiff in violation of the FHAA and the Constitution. There could be no more prima facie and clear a case of discrimination and likelihood of success on the merits than this.

79. By failing to ascertain these facts, the Defendants' refusal to negotiate for sale and to sell as obligated under the Contract for sale constitute flagrant and harsh acts of discrimination under the FHAA et al.

80. Ejectment/eviction is a sufficient "adverse action" to state a claim under the FHAA because "[d]iscriminatory conduct encompasses threats of

[24]

eviction or efforts to evict a tenant because of a disability."[3]

81. Defendants have also made discriminatory statements, particularly those made by Defendants Miner, Cone and Southern as stated above. The FHAA makes it unlawful under 42 U.S.C. § 3604(c) "[t]o make ... any notice [or] statement, ... with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... handicap."

82. Defendants have also subjected the Plaintiff to disparate treatment in violation of the FHAA. As set out above, the Defendants undeniably intended to discriminate by their actions and even written admissions. They were undeniably and improperly motivated in making the discriminating decision. (See *Bonasera v. City of Norcross,* 342 Fed.Appx. 581, 584 (11th Cir. 2009). Defendants actions and written statements clearly show a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse ... action." (See *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir.2004). These flagrant actions and writings present "a 'smoking gun' of discriminatory intent." See *Cavalieri– Conway v. L. Butterman & Assoc.*, 992 F.Supp. 995, 1003 (N.D.Ill.1998).

---

[3] *Johnson v. Macy,* 145 F. Supp. 3d 907, 915 (C.D. Cal. 2015) (citing 24 C.F.R. § 100.60(b)(5)

83. Defendants APP, Cone, Miner, Gale, Southern, Bellamy, Doe, and Terra Echelon (APP Defendants) are persons and entities in the business of selling dwellings under the FHAA, 42 U.S.C. § 3603(c) who are engaging in discriminatory housing practices under sections 804. 805, 806 and 818 of the FHAA including such practices against the Plaintiff.

84. Plaintiff established in said related Cases that he is handicapped including under 42 U.S.C. § 3602(h) and is an aggrieved person under § 3602(i).

## FIRST CLAIM FOR RELIEF
Collusion in violating Settlement Agreement

85. Plaintiff restates and incorporates by reference each paragraph previously alleged in this Complaint.

86. In acting as alleged herein, Defendant SPM acted in collusion with Defendants American Pride Properties, LLC, Tiffany Cone, Todd Miner, Douglas Gale, Megan Southern, Sonishari Bellamy, Jane Doe, and Terra Echelon (hereinafter collectively referred to as the "APP Defendants") in violating the Settlement Agreement in case numbers 2:19-cv-00885-ACA and 2:20-cv-00212-ACA in this judicial District (the "related Cases") where Defendant SPM divulged highly derogatory information regarding Plaintiff's tenancy and background in violation of the Settlement Agreement

by which APP Defendants refused to negotiate and refused to sell the Property to the Plaintiff by admitting in writing (Exhibits C and D) that they discriminated against him based on his disability causing disparate impact and disparate treatment, and based on impermissible background reasons in violation of the FHAA and Section 1983 and where they state in writing (Exhibit D) specific derogatory information that originated with SPM that is verifiable in the course of this cause of action.

87. In his letter of December 7, 2021, Defendant Miner writes that:

> "take a look at your client's legal history; he repeatedly ties up property owners and lives in the subject property without permission during the dispute."

As stated above, Plaintiff has no conflicts with any tenants in his 47 year history except Defendant SPM who is the only source of such derogatory information. Defendants have thus colluded to violate Plaintiff's rights under the FHAA by discriminating against him due to his disability in refusing to negotiate and refusing to sell the subject Property to him.

88. Resulting from the collusion with SPM, APP Defendants are further attempting to take more than $31,000.00 in funds from the Plaintiff that he has used to renovate the subject Property pursuant to his contract with APP (Exhibit B) that would contravene the settlement agreement in the related Cases and frustrate the judgment of the Court in same. Injunctive relief is due by TRO to protect Court's judgment in the related Cases.

89. Resulting from the collusion with SPM, APP Defendants gave the Plaintiff possession of the Property. They are now refusing to negotiate for the sale and to sell the Property in violation of the FHAA, and are attempting to eject the Plaintiff from the Property by an ejectment order by which Plaintiff could be ejected from the Property at any time, where notice of the ejectment has been served on the Plaintiff, in flagrant violation of the FHAA, causing devastating harms. The facts further establish that Defendants' conduct has been done with negligence and malice.

90. Defendants, who are discriminating against the Plaintiff and violating his rights under the FHAA by refusing to negotiate for the sale and by refusing to sell the Property to the Plaintiff based on his handicap and impermissible background premises have no right to eject him from the Property. They were contractually bound to sell the property to him (Exhibit B) but have refused to sell based on this discrimination. The most severe injustice is their unlawful attempt to eject him from the property that they are bound to sell to him but are refusing to do so in violation of the FHAA as set out in this complaint.

## SECOND CLAIM FOR RELIEF
Violations of 42 U.S.C. § 1983

91. Plaintiff restates and incorporates by reference each paragraph previously alleged in this Complaint.

[28]

92. In acting as alleged herein, APP Defendants acted in collusion with SPM in violating Plaintiff's constitutionally protected rights including his constitutionally protected property interests while collectively acting as state actors in violation of 42 U.S.C. § 1983 (hereinafter "Section 1983").

93. APP Defendants, in collusion with SPM, violated these rights by refusing to sell and to negotiate for the sale of the Property by discriminating against the Plaintiff based on his disability and impermissible background reasons and thus to divest him of his constitutional property interests under color of state law, and causing disparate impact and disparate treatment.

94. APP Defendants are acting in collusion with SPM in violating these constitutional rights by attempting to eject him from the Property by discriminating against him based on his disability and impermissible background reasons under the FHAA.

95. SPM is a state actor as established in the related Cases. APP Defendants are state actors by acting in collusion with SPM.

96. APP Defendants, in collusion with SPM, are attempting to eject the Plaintiff from the Property that they are refusing to sell and to negotiate to sell to the Plaintiff in violation of the FHAA and APP that could occur at any time and cause devastating harms and injuries to the Plaintiff.

97. Defendants, who are discriminating against the Plaintiff and violating his rights under the FHAA by refusing to negotiate for the sale and

by refusing to sell the Property to the Plaintiff based on his handicap and impermissible background premises have no right to eject him from the Property. They were contractually bound to sell the property to him (Exhibit B) but have refused to sell based on this discrimination. The most severe injustice is their unlawful attempt to eject him from the property that they are bound to sell to him but are refusing to do so in violation of the FHAA as set out in this complaint.

98. By so acting, the Defendants have violated and are continuing to violate Plaintiff's constitutional rights under color of state law in violation of the FHAA and Section 1983.

## THIRD CLAIM FOR RELIEF

Discriminatory Housing Practices under 42 U.S.C. §3604(a) & (f)
Discrimination, Disparate Impact and Disparate Treatment

99. Plaintiff restates and incorporates by reference each paragraph previously alleged in this Complaint.

100. Defendants except SPM are refusing to negotiate for the sale of the subject Property after admitting in writing that the reasons are discriminatory under the FHAA based on Plaintiff's handicap and based on discriminatory and impermissible reasons pursuant to a "google search", to wit:

> "Further investigation revealed a lengthy criminal and litigious history on the part of Mr. Pickard. At that point, APP made the

decision to cease further negotiations as to any potential new Agreement."

As stated above, any search of the public record alone, that is readily available also at one's fingertips especially for Defendants Miner and Southern, including particularly the related Cases that are the most recent, informs that the Defendant is disabled and that his criminal history is rooted in his mental health disability whereby Defendants' refusal to negotiate for the sale of the Property is based on Plaintiff's disability in violation of 42 U.S.C. §3604(a). The FHAA imposes the affirmative duty on a seller to base decisions regarding negotiations for the sale of any dwelling on nondiscriminatory premises, and not as in this case based on arbitrary and/or blanket criminal-based criteria and restrictions that constitute discrimination under the FHAA.

101. Even if the only consideration is criminal history alone, Defendants are refusing to negotiate for the sale of the subject Property based on arbitrary, blanket criminal-based criteria and restrictions that, as stated above, constitute discrimination in violation of the FHAA.

102. Defendants Gale and Southern, among others, participated in a conference call with Plaintiff and Mr. Holmes in which they asserted further discriminatory premises regarding their refusal to negotiate and to sell the Property to the Plaintiff.

decision to cease further negotiations as to any potential new Agreement."

As stated above, any search of the public record alone, that is readily available also at one's fingertips especially for Defendants Miner and Southern, including particularly the related Cases that are the most recent, informs that the Defendant is disabled and that his criminal history is rooted in his mental health disability whereby Defendants' refusal to negotiate for the sale of the Property is based on Plaintiff's disability in violation of 42 U.S.C. §3604(a). The FHAA imposes the affirmative duty on a seller to base decisions regarding negotiations for the sale of any dwelling on nondiscriminatory premises, and not as in this case based on arbitrary and/or blanket criminal-based criteria and restrictions that constitute discrimination under the FHAA.

101. Even if the only consideration is criminal history alone, Defendants are refusing to negotiate for the sale of the subject Property based on arbitrary, blanket criminal-based criteria and restrictions that, as stated above, constitute discrimination in violation of the FHAA.

102. Defendants Gale and Southern, among others, participated in a conference call with Plaintiff and Mr. Holmes in which they asserted further discriminatory premises regarding their refusal to negotiate and to sell the Property to the Plaintiff, all resulting in disparate impact and treatment.

[31]

103. Defendants gave the Plaintiff possession of the Property in the sales contract with him (Exhibit B). They are now refusing to negotiate to sell in violation of the FHAA and are attempting to eject the Plaintiff from the Property and have obtained an ejectment order by which Plaintiff could be ejected and forcibly removed from the Property at any time, where notice of the ejectment has been served on the Plaintiff, in flagrant violation of the FHAA, causing devastating harms and injuries to the Plaintiff.

104. Defendants, who are discriminating against the Plaintiff and violating the his rights under the FHAA by refusing to negotiate for the sale and by refusing to sell the Property to the Plaintiff based on his handicap and impermissible background premises have no right to eject him from the Property. They were contractually bound to sell the property to him (Exhibit B) but have refused to sell based on this discrimination. The most severe injustice is their unlawful attempt to eject him from the property that they are bound to sell to him but are refusing to do so in violation of the FHAA as set out in this complaint.

### FOURTH CLAIM FOR RELIEF
Discriminatory Housing Practices under 42 U.S.C. §3604(a) & (f)
Discrimination, Disparate Impact and Disparate Treatment

105. Plaintiff restates and incorporates by reference each paragraph previously alleged in this Complaint.

106. Defendants except SPM are refusing to sell the subject Property to the Plaintiff based on discriminatory housing practices. They admit in writing that they are refusing to sell based on discriminatory and impermissible reasons pursuant to a "google search", to wit:

> "Further investigation revealed a lengthy criminal and litigious history on the part of Mr. Pickard. At that point, APP made the decision to cease further negotiations as to any potential new Agreement."

As stated above, any search of the public record alone, that is readily available also at one's fingertips including particularly the most recent related Cases, inform that the Defendant is disabled and that his criminal history is rooted in his mental health disability, and hence the Defendants are refusing to sell the Property to the Plaintiff based on his disability in violation of 42 U.S.C. §3604(a). As stated above, the FHAA imposes the affirmative duty on a seller to base decisions regarding the sale of any dwelling on nondiscriminatory premises, and not as in this case based on arbitrary and/or blanket criminal-based criteria and restrictions that constitute discrimination under the FHAA.

107. Even if the only consideration is criminal history alone, Defendants are refusing to sell the subject Property based on arbitrary, blanket criminal-based criteria and restrictions that, as stated above, constitute discrimination in violation of the FHAA.

[33]

108. Defendants gave the Plaintiff possession of the Property in the sales contract with him (Exhibit B). They are now refusing to sell and are attempting to eject the Plaintiff from the Property and have obtained an ejectment order by which Plaintiff could be ejected and forcibly removed from the Property at any time, where notice of the ejectment has been served on the Plaintiff, in flagrant violation of the FHAA, causing devastating harms and injuries to the Plaintiff including disparate impact and treatment.

## FIFTH CLAIM FOR RELIEF
Discriminatory Housing Practices under 42 U.S.C. §3605(a)

109. Plaintiff restates and incorporates by reference each paragraph previously alleged in this Complaint.

110. Defendants APP, Cone, Gale, Bellamy, Doe and Terra Echelon are persons and entities whose business includes engaging in residential real estate-related transactions. As set out in the previous paragraphs, particularly in paragraphs 95 to 103 incorporated herein by reference, said Defendants are discriminating against the Plaintiff by refusing to make available the real estate transaction and the terms and conditions of this transaction per the contract with Plaintiff (Exhibit B) due to his handicap as well as due to

[34]

discrimination based on arbitrary, blanket criminal-based criteria and restrictions in violation of 42 U.S.C. §3605(a).

111. Defendants gave the Plaintiff possession of the Property under the terms and conditions of this contract and transaction (Exhibit B). They are now refusing to make this transaction and the terms and conditions set out in the contract and transaction that include the fact that they gave the Plaintiff possession of the Property. They are attempting to eject the Plaintiff from the Property in violation of this section of the FHAA and have obtained an ejectment order by which Plaintiff could be ejected and forcibly removed from the Property at any time, where notice of the ejectment has been served on the Plaintiff, in flagrant violation of the FHAA, causing devastating harms and injuries to the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants as follows:

(a) Declaring that the Defendants admitted discriminatory acts violate the FHAA, 42 U.S.C. § 3601 *et seq.*

(b) Immediately enjoining the unjust ejectment of the Plaintiff pursuant to his request for a temporary restraining order concomitantly filed herewith to be followed by a preliminary injunction.

[35]

(c) Permanently enjoining said unjust ejectment pursuant to the FHAA
and applicable relief.

(d) Awarding compensatory damages in the amount not less than
$362,657, that is the increased cost of purchasing the home caused
by the Defendants' refusal to sell the property in violation of the
FHAA. In December, 2021, when these violations began to accrue,
the interest cost to purchase the home was $173,266[4] +/-. Today,
the cost will be $535,923[5] +/-. Because of the Defendants' FHAA
violations, the increased cost to purchase the home will be
$362,657 +/-.  Plaintiff prays for additional compensatory damages
on proof and as accrued during the course of this litigation.

(e) Award of punitive damages as specifically authorized for awards
adjudicated under the FHAA and exemplary damages.

(f) Ordering such other relief as this Court deems just and equitable.

Respectfully submitted on this 10th day of November, 2023.

William M. Pickard III, Pro Se
4825 Clairmont Ave S.
P. O. Box 101
Birmingham, AL 35201-0101
(205) 586-9055
*marshall3d@hotmail.com*

---

[4] Approved loan amount of $334,636 @ 3% x 30 years.
[5] Approved loan amount of $334,646 @ 7.84% (Average FHA Loan Rate as of 11/2023) x 30 years

[36]