FILED
2025 Feb-13 PM 01:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

February 7, 2025

Clerk,

Please file this as of the postmark today, Feb. 7th.

Thanks,
William Pickard



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM M. PICKARD, III,  )
      Plaintiff,  )
vs.  )
  )
AMERICAN PRIDE PROPERTIES,  )
LLC; SPM PROPERTY MANAGEMENT,  )
LLC, a.k.a. SPM. Inc., a.k.a. SPM LLC;  )
TIFFANY CONE, personally and in her  )
capacities with American Pride Properties,  )
LLC and Terra Echelon, LLC; TODD  )
MINER, personally and in his capacity as  )
attorney for American Pride Properties,  )
LLC; DEBORAH WREN, personally  )
and in her capacity as an SPM employee;  )
JENNIFER SCOTT, personally and in  )
her capacity as Director of Compliance;  )
for SPM; ELISABETH WOODRING,  )
personally and in her capacity as an  )
employee of SPM responsible for risk  )
management; CHAREE RUSSELL,  )
personally and as an employee of SPM  )
with much expertise with Section 8 and  )
affordable housing communities responsible  )
for operational results and services to  )
regulatory agencies and residents;  )
WILLIAM B. WELDEN, personally and  )
as President of SPM responsible under  )
respondeat superior for the outrages and  )
malice committed by SPM and its employees;  )
MITCHELL G. SMITH, personally and in  )
his capacity as Executive Vice President  )
responsible under respondeat superior for  )
the outrages and malice committed by SPM  )
and its employees; DOUGLAS Q. GALE,  )
personally and in his capacities with  )

**Case No. 2:23-cv-1545-AMM**

Related Case Nos.:
2:19-cv-00885-ACA and
2:20-cv-00212-ACA

American Pride Properties, LLC and )
Terra Echelon, LLC; MEGAN L. )
SOUTHERN, personally and in her )
Capacity as attorney for American Pride )
Properties, LLC; SONISHARI BELLAMY, )
personally and in her capacity with )
American Pride Properties, LLC; JANE )
DOE ("Glenda"), personally and in her )
capacity as Agent and Realtor for )
Tiffany Cone et al.; TERRA ECHELON, )
LLC, Fictitious Defendants A-M  who )
caused and/or contributed to the harms )
and damages herein complained of, )
                                                      )
                          Defendants, )

## AMENDED COMPLAINT

### I.    Retaliation

Rather than ceasing their discrimination, the Defendants are intensifying

their discrimination against Plaintiff and are retaliating against him for filing this

Complaint, to wit:

> Their primary concern is getting rid of Pickard for
> good. They really want him out of the picture. He has
> caused a lot of trouble for them with his (in their view)
> meritless lawsuits and destructive activities at the house.'[1]

They are more determined to amplify the discrimination and harms by refusing to

sell and to negotiate for the sale of the subject property on discriminatory premises

under the Federal Housing Act (hereinafter the FHA), Federal Housing Amendment

---

[1] Text of attorney email message forwarded to Plaintiff.

Act of 1988 (hereinafter the FHAA) and in this case 42 U.S.C. Section 1983 collusion. Rather than ceasing their discrimination, malice, and limiting their liability and exposure, they are outrageously compounding and increasing it.

And, First, Plaintiff has filed only one lawsuit, not 'lawsuits, against the Defendants and it is meritorious on its face. Second, the Defendants have two appraisals showing substantial improvements to the home by the Plaintiff at a cost of tens of thousands of dollars. There are no "destructive activities." On the contrary, there are very substantial renovations and constructive activities evidenced by the appraisals and photos of which the Defendants have copies from the two appraisals.

Anyone with respect for Constitutional and federal law generally and housing and anti-discrimination laws in particular would at the very least cease from these acts set out herein and in the initial Complaint, and not continue and intensify their discrimination and harms, but sadly, there are real estate companies and property owners who have no respect for the rights of others in this regard and thus seek to violate these rights with impunity and hubris.

The Defendants are grievously retaliating against the Plaintiff for filing this Complaint. They have no apparent concern for their tortious actions but rather are doubling down on their discriminatory acts and harms under the laws and Constitution by which our society seeks to protect the rights of all persons not to be discriminated against in the most basic need of housing. Their intransigence and

3

malice render the merits of and need for injunctive relief much greater and more urgent.

## II. Summary

1.      In June, 2019, Plaintiff filed a complaint against Defendant SPM ("SPM") for discriminating against him based on his disability and handicap[2] under the FHA, FHAA and 42 U.S.C. Section 1983 (hereinafter "Section 1983"). This case was settled in February, 2021 for a substantial monetary award and further, by which he would relocate and SPM would thereafter provide him a neutral tenant reference (See Exhibit "A") that would not be negative and impair his ability to find new housing.. Immediate relocation to another subsidized apartment failed to materialize, and he had to find other housing that he could afford, a very difficult task.

2.      He submitted applications for subsidized housing including at Presbyterian Manor Apartments. After being repeatedly approved for prior subsidized housing, this application was rejected on premises that he discovered to be based on a derogatory reference by SPM as a repeated act of discrimination and breach of said settlement agreement. The only landlord with whom he has had conflict over his 47 years of tenant-landlord history is Defendant SPM whose treachery in maligning the Plaintiff in malicious breach of the settlement agreement

---

[2] . Related case no. 2:19-cv-00885-ACA amplified by subsequent case no. 2:20-cv-00212-ACA

4

was not denied by Presbyterian Manor. There was no other source for such a negative reference and disparagement. Plaintiff filed a HUD complaint and received a monetary settlement from Presbyterian Manor.

3.    SPM continued this treachery and malice in maligning the Plaintiff with American Pride Properties, ("APP") et al., cited by APP as direct source and premise for APP's overt and undeniable discrimination stated in the letter of December 7, 2021 (Exhibit D) clearly admitting to the discrimination in violation of the FHA, FHAA and Section 1983, followed by sworn testimony and related confirmation of the discrimination.

4.    And now, they have added retaliation and intensified discrimination stated with malice and aforethought declaring their intention to double down on their acts of discrimination and to retaliate against the Plaintiff for filing his complaint for relief from their discrimination, itself an egregious violation of the FHA, FHAA and in this instance collusion in violating Section 1983.

5.    By doing so, they have significantly increased the imminent harms against the Plaintiff and his likelihood of success on the merits of this complaint by their increased their determination to intensify the discrimination, retaliation and imposition of the harms herein asserted.

6.    The insanity of this position is further shown by the fact that if they had not discriminated and had sold the property to Plaintiff, and if they would now

honor the contract and sell the property to him as agreed rather than admitting that they are refusing to sell on discriminatory grounds, then they would have no need to "get rid of" him because they would have the consideration agreed to in the contract (Exhibit "A"), he would have the home, and they would have no more interest in the property. There would be no expressed need to 'get rid of' him.

7.      Only by retaliating against him for filing this complaint and by intensifying their discrimination in refusing to sell to him on undeniably discriminatory premises is there any malicious need to "get rid of" him.

8.      They have thus amplified the merits of this cause of action and the need for injunctive relief to preserve the status quo and prevent irreparable harm pending the outcome of this case.

### III. Jurisdiction and Venue

9.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(4), 42 U.S.C. § 3613(a)(1)(A), and 42 U.S.C § 1983.

10.      The Court further has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine Plaintiff's state law claims because those claims are inextricably intertwined with his federal law claims and arise out of a common nucleus of related facts. Hence they form part of the same case or controversy under Article III of the U.S. Constitution.

11.      The Court has jurisdiction to enjoin the state proceedings under Title

U.S.C. §1983 (hereinafter "§1983"). U.S. Supreme Court and 11th Circuit precedent affirms that "under the criteria established in our previous decisions construing the anti-injunction statute, 42 U.S.C. §1983 is an Act of Congress that falls within the 'expressly authorized' exception of that law."[3]

12.    Venue is proper in this District and Division pursuant to 28 U.S.C. §§ 81 and 1391(b)(2).

### IV. Parties And Liable Acts

13.    The Plaintiff is William Marshall Pickard III who is an adult resident of Jefferson County, Alabama, whose physical address is 4825 Clairmont Avenue South, Birmingham, Alabama 35222 and whose mailing address is P.O. Box 101, Birmingham, AL 35201.

14.    Defendant American Pride Properties, LLC ("APP"), upon information and belief, is a Delaware limited liability company registered to conduct business in Alabama and can be served upon its registered agent, CT Corporation System, 2 North Jackson Street Suite 605, Montgomery, AL 36104. APP directly acted in refusing to sell the subject property in violation of the FHA/FHAA and Section 1983 and in retaliating against the Plaintiff for filing this

---

[3] *Mitchum v. Foster*, 407 U.S. 225 (1872; *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, at 367-368, (1989); *Sprint Communications Inc. v. Jacobs, et al.*, 571 U.S. 69 (2013); *Huffman v. Pursue*, Ltd., 420 U.S. 592 (1975), and *Middlesex County v. Bar Association*,, 457 U.S. 423 (1982); *Henry v. First National Bank of Clarksdale*, 595 F.S2d 291, at 300 (5th Cir. 1979); *Forehand v. First Alabama Bank of Dothan*, 727 F.2d 1033 (11th Cir. 1984).

complaint. APP colluded with Defendants Cone, Bellamy, Gale, Miner, Southern, Jane "Glenda" Doe and Terra Echelon to attempt to unilaterally void the Contract (Exhibit B) with outrageously unreasonable demands and addenda and with the unilateral and outrageously unlawful memo sent by Cone asserting that the Contract was unilaterally, thus unlawfully alleged to be void. APP acted directly with said Defendants in discriminating against the Plaintiff by refusing to sell the subject property to him in direct and undeniable violation of the FHA/FHAA, Section 1983 and related federal law. APP is sued in its business capacity and in its capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

15.     Defendant SPM, upon all information and belief, is an Alabama Limited Liability Company who can be served upon its registered agent, William B. Welden, 1103 Richard Arrington Jr Blvd S., Birmingham, AL 35205. SPM directly colluded with Defendants Scott, Woodring, Russell, W. B. Welden, Smith, W. E. Welden in violating Plaintiff's constitutional rights by breaching the settlement agreement in case no. 2:20-cv-00212-ACA by the issuance of negative and derogatory landlord references against the Plaintiff thus causing and contributing to the discrimination and retaliation suffered by Plaintiff who was denied affordable housing as a result and was discriminated against by the refusal to sell the subject property in violation of the FHA/FHAA and Section 1983 by giving the negative and derogatory refenences directly cited by APP and the APP

Defendants identified herein as a main premise for denying him housing and refusing to sell property in violation of the FHA, FHAA, and Section 1983. SPM is sued in its business capacity and in its capacity as a state actor pursuant to case no. 2:20-cv-00212-ACA.

16.      Defendant Tiffany M. Cone, upon all information and belief, is an adult resident of the State of Florida whose address is 225 S. Westmonte Drive, Suite 3050, Altamonte Springs, Florida 32714, and whose mailing address is 3716 E. Heartleaf Ct, Boise, ID 83716. Cone directly acted in refusing to sell in violation of the FHA/FHAA and Section 1983 and in retaliating against the Plaintiff for filing this complaint. She acted to attempt to unilaterally void the Contract (Exhibit B) with outrageously unreasonable demands and addenda and with her unilateral and outrageously unlawful memo asserting that the Contract was unilaterally, thus unlawfully alleged to be void. She acted directly with Defendants Gale, Southern, Miner, Bellamy, Jane "Glenda" Doe, APP and Terra Echelon in discriminating against the Plaintiff by refusing to sell the subject property to him in direct and undeniable violation of the FHA/FHAA, Section 1983 and related federal law. She is sued personally, in her capacity as Vice-President of and "attorney in fact" for American Pride Properties, LLC, as Vice-President of Terra Echelon, LLC., and in her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

9

17.     Defendant Todd Miner, upon all information and belief, is an adult resident of the State of Alabama whose address is 2850 19th St S Suite 370, Homewood, AL 35209. He acted directly with Defendants Gale, Southern, APP and Terra Echelon in discriminating against the Plaintiff by refusing to sell the subject property to him in direct and undeniable violation of the FHA/FHAA, Section 1983 and related laws. He wrote the letter of December 7, 2021 (Exhibit D) where he directly confirmed the refusal and discrimination against the Plaintiff by refusing to sell the subject property to him in violation of the FHA/FHAA and Section 1983 and related federal law. He is colluding with these Defendants in retaliating against the Plaintiff for filing this complaint. He is sued personally, in his capacity as attorney for Defendant American Pride Properties, LLC, and his capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212.

18.     Defendant Deborah Wren upon information and belief is still employed by Defendant SPM. She is the person who submitted the neutral letter of reference (Exhibit "A") under the settlement agreement in said related cases that has repeatedly been breached by negative references , thus directly causing and contributing to the harms suffered by Plaintiff, particularly in being denied affordable housing evidenced by the negative reference given to Presbyterian Manor that resulted in the denial of affordable housing to Plaintiff. She is sued

10

personally, in her capacity as an employee of SPM, and her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

19.    Defendant Jennifer Scott upon information and belief is a resident of the State of Alabama. She is sued personally, in her capacity as the Director of Compliance for Defendant SPM. It is her responsibility and duty to ensure compliance with federal and other programs. She abrogated this duty by refusing to comply with this duty and by permitting the ongoing discrimination and retaliation against the Plainfiff, the noncompliance with which is a primary duty for her. She is sued personal and her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

20.    Defendant Elisabeth Woodring upon information and belief is a resident of the State of Alabama. She is and has been responsible for risk management from the initial violations of the settlement agreement between Plaintiff and SPM to the present and ongoing retaliation. She abrogated this duty by refusing to comply with this duty and permit the ongoing discrimination and retaliation against the Plainfiff, and thus caused and contributed to the discrimination and retaliation against the Plaintifff. She certainly was aware, or certainly should have been aware, of the discrimination leading to the 2021 monetary settlement awarded to Plaintiff in the related cases. Had she exercised risk management from this point forward, the harms suffered by Plaintiff from 2021 to

11

the present would have been averted. She is sued personally, in her capacity as an employee of Defendant SPM responsible for risk management, and her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

21.     Defendant Charee Russell on information and belief is a resident of the State of Alabama. She is sued personally, in her capacity as and employee of Defendant SPM having extensive experience and expertise with Section 8 and affordable housing communicates and responsible for operational results and services to regulatory agencies and residents, She has abrogated this duty by her negligence and discrimination and thus contributed to the retaliation against the Plaintiff that would have been averted if she had exercised operational control and competent services for Plaintiff as a former resident. She is sued personally and in her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

22.     Defendant William B. Weldon upon information and belief is a resident of the State of Alabama. He is sued personally, in his capacity as President of SPM, LLC. He is liable under respondeat superior for the colossal, across the board abrogation of responsibility and duty by SPM actors. He was a party in the related cases and has been, or certainly should have been most acutely aware of the issues stated in this cause of action. That he has failed in his duty resulting in the discrimination and retaliation against the Plaintiff is an outrage and arguably a tort

of outrage. He is sued personally and in his capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

23.     Defendant Mitchell G. Smith upon information and belief is a resident of the State of Alabama. In his capacity as director of client services and operations, he abrogated this duty by his negligence and discrimination against the Plaintiff that would have been averted if he had exercised his duty directly and under respondeat superior thus further contributing to the retaliation against the Plaintiff. He is sued personally and in his capacity as Executive Vice President of SPM, LLC, in his capacity under respondeat superior, and in his capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

24.     Defendant Douglas Q. Gale, upon all information and belief, is an adult resident of the State of Florida whose address is 225 S. Westmonte Drive, Suite 3050, Altamonte Springs, Florida 32714, and whose mailing address is 3716 E. Heartleaf Ct, Boise, ID 83716. Gale was a principal actor in discrimination against the Plaintiff manifested significantly in the phone call identified below where he directly expressed discriminatory assertions against the Plaintiff confirmed in the letter of December 7, 2021 (Exhibit D). He is further liable under respondeat superior for discrimination and retaliation against the Plaintiff. He is sued in personally and in his capacity as President of American Pride Properties, LLC, President/Manager of Terra Echelon, LLC, and his capacity as a state actor

acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

25.     Defendant Megan L. Southern, upon information and belief, is an adult resident of the State of West Virginia whose address is 325 Eighth Street, Huntington, WV 25701. Southern wrote the first letter unjustly disparaging the Plaintiff and directly causing the discrimination against him as set out below and contributing to the retaliation against the Plaintiff. As an attorney, her actions are undeniably an outrage and arguably a tort of outrage. She is sued personally, in her capacity as attorney for American Pride Properties, LLC during the relevant times stated in this Complaint, and her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

26.     Defendant Sonishari T. Bellamy, upon information and belief, is an adult resident of the State of Florida whose address is 14767 Clarkson Drive, Orlando, FL 32828.  Bellamy was primary in the negotiation of the Contract (Exhibit B) and directly colluded with Defendants Cone, Gale, Southern, APP and Terra Echelon in the acts of discrimination against the Plaintiff in refusing to sell in violation of the FHA/FHAA and Section 1983 and thus contributing to the retaliation against the Plaintiff for filing this complaint. She is sued in her individual capacity, her capacity as Asset Manager for American Pride Properties, LLC during the relevant times stated in this Complaint, and in her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

27.     Defendant Jane Doe, whose first name upon information and belief is "Glenda" and whose identity is otherwise unknown at present, is identified by Defendant Tiffany Cone as her agent and realtor. As such her identity can be ascertained from Defendant Cone and she can be served at the address of her principal, Defendant Tiffany Cone, at 225 S. Westmonte Drive, Suite 3050, Altamonte Springs, Florida 32714, or otherwise as informed by Ms. Cone. She directly contributing to the discrimination against the Plaintiff by driving from Florida to the subject property and by unlawfully and outrageously attempting on October 20, 2021 to lock Plaintiff out of the subject property and dispossess him of the property in outrageous violation of numerous laws. She thus is contributing to the retaliation against the Plaintiff. She is sued personally, her capacity as agent and realtor for Tiffany Cone, and in her capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

28.     Defendant Terra Echelon, LLC, upon all information and belief, is a Florida limited liability company who can be served upon its registered agent, Douglas Q. Gale, at 225 S. Westmonte Drive, Suite 3050, Altamonte Springs, FL 32714. APP directly acted in refusing to sell in violation of the FHA/FHAA and Section 1983 and in retaliating against the Plaintiff for filing this complaint. Terra Echelon colluded with Defendants Cone, APP, Bellamy, Gale, Miner, and Southern to attempt to unilaterally void the Contract (Exhibit B) with outrageously

unreasonable demands and addenda and with the unilateral and outrageously unlawful memo sent by Cone asserting that the Contract was unilaterally, thus unlawfully alleged to be void. Terra Echelon acted directly with said Defendants in discriminating against the Plaintiff by refusing to sell the subject property to him in direct and undeniable violation of the FHA/FHAA, Section 1983 and related federal law. Terra Echelon is sued in its business capacity and in its capacity as a state actor acting in collusion with state actors in case no. 2:20-cv-00212-ACA.

29.    Fictitious Defendants A through M are individuals or entities who caused or contributed to the injuries and damages complained of in this Complaint whose identities are unknown at present but will be supplied by amendment when ascertained.

## V. Facts

30.    This is a complaint for relief from the breach of the settlement agreement in case nos. 2:19-cv-00885-ACA and 2:20-cv-00212-ACA in this District and for discrimination, retaliation and related harms and injuries from violations of the FHA, FHAA and Section 1983.

31.    For 47 years, Plaintiff has had good and unblemished relationships with landlords until Defendant SPM.

32.    On March 13, 2019, Plaintiff leased and moved into an apartment at Highland Manor. Birmingham, Alabama, managed by Defendant SPM.

33. This is a complaint for relief from the breach of the settlement agreement in case nos. 2:19-cv-00885-ACA and 2:20-cv-00212-ACA in this District and for discrimination, retaliation, and related injuries from violations of the Federal Housing Act ("FHA") and Federal Housing Act Amendments of 1988 ("FHAA") and 42 U.S.C. §1983.

34. For 47 years, Plaintiff has had good and unblemished relationships with landlords until Defendant SPM, LLC.

35. On March 13, 2019, Plaintiff rented an apartment at Highland

36. Plaintiff became embroiled in conflicts and disputes with SPM, *et al.* regarding discrimination to which he was subjected that resulted in litigation from June 10, 2019 until February 18, 2021 when the case was settled.

37. Under the settlement terms, the Plaintiff was awarded a substantial monetary sum and would vacate the apartment for other housing. SPM agreed to provide a "neutral reference" to any prospective landlord or entity requesting a reference. This reference would be a "complete and entire reference" and would only disclose dates of occupancy (see reference letter attached as Exhibit "A").

38. Defendant SPM has repeatedly breached this agreement by giving derogatory information to successive landlords that could have only originated from SPM. Plaintiff is suffering devastating, immediate and irreparable harms

17

as a result and is in imminent peril of being ejected from his present home and being rendered homeless.

39. The present discrimination by Defendant APP and associated Defendants is a grievous continuation of intentional, verifiable, and invidious discrimination and harms and retaliation against the Plaintiff that began with SPM in violation of the FHA, FHAA and Section 1983, et al..

40. Following the settlement agreement, Plaintiff focused on three options to find subsequent housing: (1) another subsidized property, (2) a leased property that he could share if necessary and thus afford; and (3) a property to purchase that he could share if necessary and thus afford.

41. Plaintiff submitted numerous applications for subsidized housing including at Park Place Apartments and Presbyterian Manor Apartments. Park Place had an apartment that was due to become available but this apartment did not materialize in time.

42. An apartment did become available in time at Presbyterian Manor. After being repeatedly approved for subsidized housing, this application was rejected on premises that he discovered to be based on a derogatory reference given by a prior landlord (SPM) as a repeated act of discrimination and breach of said settlement agreement.

(a) The only landlord with whom he has had conflict over his 47 years

of tenant-landlord history is Defendant SPM whose treachery and breach of the settlement agreement with Plaintiff in case no. 20-cv-212 was not denied by Presbyterian Manor and admitted by APP

    (b) He filed a HUD complaint and received a monetary settlement from Presbyterian Manor.

    (c) However, unless Plaintiff could find subsidized or otherwise affordable housing in time, the settlement amounts would be exhausted and Plaintiff would be homeless.

43. In his effort to find affordable housing, Plaintiff also researched foreclosure and tax sale records at the Jefferson County Courthouse. He found a home located at 4825 Clairmont Avenue South in Birmingham (the "Property") that was obtained by Defendant American Pride Properties, LLC ("APP") by Tax Default Foreclosure.

    (a) At this point in time, APP was engaged in the process to quiet title to the Property.

    (b) This was the only viable option for housing that he could find within the time frame for moving pursuant to the settlement.

44. On March 9, 2021, Plaintiff signed a contract with APP, the Seller, at a purchase price of $255,000.00 (hereinafter the "Contract") (copy attached as Exhibit "B".)

45. The Contract gives him possession of the home and allows him to make renovations to increase the value and equity in the home. If he could increase the equity sufficiently for a reverse mortgage, he would have a home to live in for the rest of his life without a monthly payment, and even better, positive income from sharing the home. Or, he could assign the contract on terms that would allow him to share the home.

46. There were two major risk factors in contracting to buy the home. First, the quiet title action was still pending and it was not certain, and there was no assurance, as to if and when APP might get title. Second, the renovations required to mortgage the home might be prohibitively expensive and Plaintiff's settlement funds might be insufficient, and the home had foundation problems and it was not certain as to whether the home would pass inspection by a prospective lender, especially a HUD lender.

47.      Plaintiff and APP agreed in the Contract that closing would be contingent upon clearing title and final approval and scheduling of financing (see paragraph 4 of the Contract, Exhibit B).

48.      On July 15, 2021, the property appraisal was issued valuing the property at $355,000.00 that was $100,000.00 more than Plaintiff's Contract price. Quiet title had been granted, but not yet recorded as required to vest title.

49.      Plaintiff has made major renovations that total more than $31,000.00.

50.       It was also at this point that APP made efforts to breach the Contract. APP tried to get Plaintiff to agree to impossible terms for closing and to set an unreasonable time for the expiration of the Contract, which Plaintiff refused to agree to.

51. On August 26, 2021, Defendant Cone unilaterally declared the Contract to be void in violation of the statute of frauds that requires that any such alteration of a Contract must be made and agreed to in writing by the parties thereto, and Plaintiff did not agree to any voiding of the Contract.

(a) Plaintiff obtained the assistance of attorney Jeff Holmes in attempting to mediate the dispute.

(b) APP began efforts to make Plaintiff the issue rather than their discrimination, ineptitude and obligations and binding agreement under the Contract, constituting housing discrimination and prima facie and flagrant violation of the FHA, FHAA, Section 1983, et al.

(c) Between August 26, 2021 and December 7, 2021, Mr. Holmes made best efforts to obtain a resolution and facilitate the closing of the sale.

52.       He obtained a verbal commitment from defendant Southern, then attorney for APP, to sell the property for a price of $270,000.00. This agreement

was subsequently breached.

53. On September 13, 2021, Mr. Holmes arranged a conference call with Defendant APP that included Defendants Cone and Gale. Defendant Gale made derogatory remarks that continued Defendants' efforts to make Plaintiff the issue, not their discrimination, ineptitude, obligations and binding agreement, subsequently admitting that the reason for the breach was discriminatory based on Plaintiff's disability in prima face and flagrant violation of the FHA, FHAA, Section 1983, et al.

54. On October 20, 2021, defendant Southern presented a written offer from APP to sell at a price of $280,000.00. Then again, they breached the agreement to close at this price. Southern disparaged Plaintiff (see Exhibit C) and continued APP's efforts to make Plaintiff the issue, not their discrimination, ineptitude, obligations and binding agreement under the Contract, in prima face and flagrant violation of the FHA, FHAA, and Section 1983, et al, further and subsequently admitting to the discrimination in refusing to sell to Plaintiff.

55. On October 20, 2021, Defendants Cone and ("Glenda") Doe attempted to unlawfully remove and lock Plaintiff out of the Property that they had given him possession of in an outrageous act of malice and discrimination.

56. On December 7, 2021, in an outrageous letter by Defendant Miner, he stated in writing and admitted that Defendant APP was refusing to sell in

unlawful, flagrant and prima facie violation of the FHA, FHAA, Section 1983, et al., to wit:

> "Further investigation revealed a lengthy criminal and litigious history
> on the part of Mr. Pickard. At that point, APP made the decision to
> cease further negotiations as to any potential new Agreement."
> (See Letter, page one, Exhibit "D".)

57. Title 42 U. S. C. §3604(a) specifically states that it is unlawful to refuse to sell or rent, including to negotiate for the sale or rental of a dwelling based on an individual's protected status including a buyer's disability, and also based on arbitrary or blanket criminal-based criteria or restrictions in the sale or rental or negotiation for the sale or rental of a dwelling as set out in detail below.

58. On April 25, 2023, Defendant Cone continued this discrimination stating under oath that the means by which they conducted such an 'investigation' (Exhibit D) was by **"a google search"** (Emphasis added.) (See transcript excerpt, Exhibit "E"). She testified that based on this "google search", Defendants halted negotiations and refused to sell to the Plaintiff. There could be no more flagrant admissions of discrimination and violations of the FHAA that is ongoing and continues to the present date.

59. One of the attorneys who had cross examined her asked that they would negotiate to settle the action and for sale of the property on that date of the trial. Cone refused, further evidencing this housing discrimination.

60. A seller may not discriminate against a buyer because the seller

does not like the buyer, or because of the buyer's disability, or even because of arbitrary or blanket criminal-based criteria or restrictions placed against the buyer.

### Plaintiff's background and legal history confirms that he is disabled

61. Had the APP Defendants done what they were obligated to do, and what they said that they had done in investigating Plaintiff's background and legal history, they would have immediately found that he was disabled from the most recent legal history records that prominently was the litigation between Plaintiff and SPM which they admit to being aware of by citing from this litigation (for example: alleging that Plaintiff has a history where he "repeatedly ties up property owners and lives in the subject property without permission during the dispute." where there is no prior such conflict with a landlord util SPM and that is a patently false allegation (Plaintiff did not 'tie up' SPM and live in the apartment without permission but rather occupied the apartment under his rights under his lease with timely lease payments) constituting further absolute proof of their discrimination against the Plaintiff.)

62. This litigation also provides knowledge and proof that his criminal charges were the result of his mental health disability and were mitigated based on his disability including repeated findings of incompetence to stand trial and

24

compromised mental state.

63. Plaintiff suffers from a life-long, severe, chronic and disabling mental illness. From age 5, he has suffered crippling episodes of acute depression and mania that has resulted in devastating trauma for him not the least of which have been criminal charges, primarily bad checks and loans, which again have been mitigated due to repeated findings of incompetence to stand trial and compromised mental state.

64. However, even without such mitigation, Defendants flagrantly violated the FHAA that proscribes discrimination based on arbitrary or blanket criminal-based criteria or restrictions in the negotiations for and the sale or rental of housing as set out in more detail below.

(a) Defendants further characterize him as "litigious." First, this is a frivolous claim regarding any valid reason to refuse to negotiate for, sell or rent a dwelling.

(b) Moreover, the cases brought by Plaintiff have proceeded as meritorious without exception including positive outcomes. The right to petition for redress of grievances is enshrined in Bill of Rights. Courts hold that this right should not be abridged without just cause, such as the abuse of the right by the repeated filing of frivolous and abusive process.

(c) Again, that is far from the case here, and there is no just cause to

25

abridge his Constitutional rights, nor does this claim find any basis in statute, rule, regulation, case law, precedent or other authority, and certainly no basis to discriminate against the Plaintiff.

(d) This is further compounded by the retaliation against the Plaintiff by the Defendants for filing this complaint that has merit on its face.

65. Second, the last previous related litigation that he filed were the related cases in this Court versus SPM for discrimination based on his mental health disability, cases that resulted in positive outcomes. The record, not the least of which is this record, that their admissions state that they examined, versus a "google search" (Exhibit E), identified and informed APP Defendants of his disability.

66. This further establishes that their google search was inept and incompetent and his disability was readily ascertained from his record that they admit to examining.

67. Under these facts, it is undeniable that the Defendants' refusal to negotiate for sale and to sell as obligated under the Contract for sale constitute undeniable acts of discrimination under the FHA, FHAA, Section 1983. et al.,

68. Section 805(a) of the FHA states that "It shall be unlawful for any person or other entity whose business includes engaging in real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race,

color, religion, sex, handicap, familial status, or national origin." Title 42 U.S.C. §3605(a). Defendant APP is an entity whose primary business is in engaging in real-estate and real-estate related transactions, and they have admittedly discriminated against the Plaintiff in violation of this law.

**69.** This specifically includes negotiations for the sale of property as well as the sale itself. Title 42 U. S. C. §3604(a) states that it is unlawful based on such protected characteristics "To refuse to sell or rent after the making of a bona fide offer, **or to refuse to negotiate for the sale or rental** of, or otherwise make unavailable or deny, a dwelling to any person." Defendants have admittedly discriminated against the Plaintiff due to his handicap and disability in violation of this law as well, even stating in writing and on oath that they refused to sell and refused to negotiate for the sale of the Property based on their violations of the FHA, FHAA, Section 1983, et al.

**There was no valid premise to refuse to negotiate and sell to Plaintiff based on background and legal history**

70. As stated above, a competent investigation of the Plaintiff's background and legal history reveals that he is disabled, hence the FHA, FHAA and Section 1983, et al., proscribes discrimination by the refusal to negotiate and sell to Plaintiff, that Defendants have clearly, admittedly and thus undeniably done, incredibly affirmed in writing by Defendant Miner (see his letter attached as Exhibit "D') and by Defendant Cone on oath (Exhibit "E")

**Even if Plaintiff had a criminal history standing alone,
without handicap and disability, Defendants violated
the FHA, FHAA, Section 1983, et al.**

71. Even assuming, arguendo, that the consideration was criminal history alone, federal rules and regulations proscribe the arbitrary consideration of criminal history as lawful in refusing to rent or sell under the FHA/FHAA.

72. On April 4, 2016, the U.S. Department of Housing and Urban Development ("HUD") promulgated the "Office of General Counsel Guidance on Application of Fair Housing Act Standards to the Use of Criminal Records by Providers of Housing and Real Estate-Related Transactions" which held that creating arbitrary or blanket criminal-based criteria or restrictions in the negotiations for and the sale or rental of housing, without determining nondiscriminatory factors, violates the FHA, FHAA, et al.

73. The Supreme Court had just issued the opinion in *Texas Dep't of Housing v. Inclusive Comtys Project,* 135 S.Ct. 2507 (2015) holding that disparate impact claims are cognizable under the Fair Housing Act. While persons with criminal records are not per se a protected class under the FHA, criminal history-based barriers to housing that have a disparate and disproportionate impact on a protected class under the Act constitutes discrimination in violation of the FHA.

74. Statistics overwhelmingly establish that persons with disabilities

disproportionately suffer disparate impact in the criminal justice system. Research published in the November, 2017 edition of the *Journal of Public Health,* found that an astonishing 40 percent of the caucasian population with disabilities had been arrested by age 28, and that caucasians with disabilities arrested by age 28 have a 30.60% increased probability of arrest compared with caucasians without disabilities as cited in their December, 2017 edition. This research further found that the types of handicap and disability were evenly distributed across all races.

75.  Statistics also confirm that persons with disabilities are over-represented in all interactions with the criminal justice system, and at all points, that system is failing them.

(a) The Center for American Progress released a Report in 2016 that provides a strong overview of the ways that disabled people suffer prejudice and are failed by the criminal justice system "from policing to courts to incarceration." The Report confirms that the disabled represent a disproportionate number of those stopped and arrested.

(b) This is partially because, as the ACLU of Southern California and the Bazelon Center for Mental Health Law report, the "war on drugs and other mass incarceration policies criminalize behaviors related to handicap and disability to include mental health symptomology,

29

substance use (which is often a method of self-medication), homelessness (as of 2015, the Department of Housing and Urban Development estimated that 78% of people in shelters had a disability), and atypical reactions to social cues (which may be interpreted as aberrant or "disorderly conduct").

(c) Societal attitudes towards the disabled and the intersections of related factors contribute to their criminalization.

76. As advised by HUD's General Counsel, those who sell or rent property and reject persons based on criminal history do so at their peril if they fail in their duty and obligation to ascertain and base such decisions on nondiscriminatory factors when implementing criminal history policies or practices used to make housing decisions and where they deploy arbitrary or blanket criminal-based policies or restrictions that result in discrimination including by disparate impact and disparate treatment under the FHA/FHAA.

77. It is a manifest fact that the internet is riddled with false, inaccurate, often scandalous and unjustly harmful information. Perhaps the worst way to check someone's background and legal history would be through a google search. Yet this is exactly what Defendants did. (Exhibit E).

78. In light of the Defendant's discrimination, ineptness, incompetence, negligence and disregard for the rule of law such as that which applies in this

30

case, Defendants' discriminatory conduct is made more intentional and severe
by this negligence to include malice and aforethought .

79. Moreover, Defendants "googled" the matter when the definitive facts
were also available at their fingertips, particularly immediately recent court
records including the related cases versus SPM adjudicated by this Northern
District Court.

80. Miner further writes that:

> "take a look at your client's legal history; he repeatedly ties
> up property owners and lives in the subject property without
> pennission during the dispute." (Exhibit D, p. 2)

81. Miner states facts that are verifiably false, malicious and that further
establish his prima facie and flagrant violations of the FHA, FHAA, Section
1983, et al., and his collusion with SPM Defendants, et al., in the denial of these
rights.

82.        As stated above, the Plaintiff, in his 47 year history regarding his
tenancies, has a positive and unblemished record, except his conflict with
Defendant SPM. And in this case, he did not "tie up" the apartment leased
from SPM. He occupied it pursuant to his rights as a tenant and was never
dispossessed of these rights. He did not "live in the subject property without
permission during the dispute," nor has he ever done so throughout his lifetime.
He lived in the property under his rights as a tenant and paid rent faithfully and

on time directly or into the court for the entire duration. Plaintiffs record establishes that he has **never** so encumbered a property and especially, he has not "repeatedly" done so as falsely and outrageously alleged.

83. The only source in Plaintiff's record for these falsely alleged claims of 'repeated' landlord-tenant conflict is from the conveyance of negative information from Defendant SPM in violation of paragraph 8 of the settlement agreement in the related cases in this District Court (case numbers cited on page 1 of this Complaint), and constituting collusion between SPM and APP.

    (a) It is inescapable that derogatory information was conveyed by SPM to APP including such allegations of repeated landlord-tenant conflicts where the Plaintiff is alleged to have 'tied up' property owners and occupied their properties without permission during the disputes. There is no other source for these allegations.

    (b) Again, except for SPM, Plaintiff has an unblemished history with landlords, hence the only landlord who could be the source of such drastically derogatory information is SPM. This allegation is extremely inflammatory and injurious, and verifiably false.

84. These injuries have been greatly compounded by Defendant APP who filed to eject him. This ejectment is on appeal, but Defendant APP has

obtained an ejectment order (Exhibit F). Plaintiff has been served with this notice and is in immediate jeopardy at any time of the most severe devastation and irreparable injury of being ejected from the Property in flagrant violation of his rights under the FHA, FHAA, Section 1983, et al.

(a) As set out in his initial motion for injunctive relief that will be augmented and refiled for following the filing of this amended Complaint, this is a case where the first exception to the Anti-Injunction Act applies and *Younger* abstention does not apply, hence injunctive relief is authorized, warranted and essential where Plaintiff will suffer immediate devastating and irreparable injuries without action to enjoin or proscribe ejectment and the Court would be unable to accord meaningful relief in such a case.

(b) The Defendants have admitted in writing and on oath that they are discriminating against the Plaintiff in violation of the FHA/FHAA and the Constitution. There could be no more prima facie and clear a case of discrimination and likelihood of success on the merits than this.

(c) The retaliation and intensification of the discrimination by the Defendants further amplify the merits of this case and the urgency of injunctive relief pending the adjudication of this case.

85 Ejectment/eviction is a sufficient "adverse action" to state a claim

under the FHA, FHAA, Section 1983, et al., because "[d]iscriminatory conduct encompasses threats of eviction or efforts to evict a tenant because of a disability." 4 [1]

86. Defendants have also made discriminatory statements, particularly those made by Defendants Miner, Cone and Southern as stated above. The FHA/FHAA makes it unlawful under 42 U.S.C. § 3604(c) "[t]o make ... any notice [or] statement, ... with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... handicap."

87. Defendants have also subjected the Plaintiff to disparate treatment in violation of the FHA/FHAA. As set out above, the Defendants undeniably intended to discriminate by their actions and even written admissions and on oath. They were undeniably and improperly motivated in making the discriminating decision. (See *Bonasera v. City of Norcross*, 342 Fed.Appx. 581, 584 (11th Cir. 2009).

88. Defendants actions and written statements clearly show a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse ... action." (See *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir.2004). These flagrant actions and writings

---

4[1] *Johnson v. Macy*, 145 F. Supp. 3d 907, 915 (C.D. Cal. 2015) (citing 24 C.F.R. § 100.60(b)(5)

present "a 'smoking gun' of discriminatory intent." See *Cavalieri- Conway v. L. Butterman & Assoc.*, 992 F.Supp. 995, 1003 (N.D.Ill.1998).

89. Defendants APP, Cone, Miner, Gale, Southern, Bellamy, Doe, and Terra Echelon (APP Defendants) are persons and entities in the business of selling dwellings under the FHA, FHAA, 42 U.S.C. § 3603(c) who are engaging in discriminatory housing practices under sections 804. 805,806 and 818 of the FHAA as set out herein including such practices against the Plaintiff.

90. Plaintiff established in said related Cases that he is handicapped including under 42 U.S.C. § 3602(h)and is an aggrieved person under § 3602(i).

91. The facts comprehensively and undeniably establish that Plaintiff has suffered egregious and intense discrimination, together with malice.

### FIRST CLAIM FOR RELIEF
Collusion in violating Settlement Agreement

92. Plaintiff restates and incorporates by reference each paragraph previously alleged in this Complaint.

93.    In acting as alleged herein, Defendant SPM and the Defendants employed by and associated with SPM (hereinafter referred to as the SPM Defendants) acted in collusion with Defendants American Pride Properties, LLC, Tiffany Cone, Todd Miner, Douglas Gale, Megan Southern, Sonishari

Bellamy, Jane Doe, and Terra Echelon (hereinafter collectively referred to as the "APP Defendants") in violating the Settlement Agreement in case numbers 2:19-cv-00885-ACA and 2:20-cv-00212-ACA in this judicial District (the "related Cases") where Defendant SPM divulged highly derogatory information regarding Plaintiffs tenancy and background in violation of the Settlement Agreement and by which APP Defendants refused to negotiate and refused to sell the Property to the Plaintiff by admitting in writing (Exhibits C and D) and sworn testimony (Exhibit E) that they discriminated against him based on his handicap and disability causing disparate impact and disparate treatment, and based on impermissible background reasons in violation of the FHA, FHAA and Section 1983 and where they state in writing (Exhibit D) and on oath (Exhibit E) specific derogatory information that originated with SPM that is verifiable in the course of this cause of action.

94. In his letter of December 7, 2021, Defendant Miner writes that:

> "take a look at your client's legal history; he repeatedly ties up property owners and lives in the subject property without permission during the dispute."

-    As stated above, Plaintiff has no conflicts with any tenants in his 47 year history except Defendant SPM who is the only source of such derogatory information. Plaintiff has not done so in the past and he is not doing so in the present. Defendants have thus colluded to violate Plaintiff's rights under the

36

FHA/FHAA by discriminating against him due to his handicap and disability in refusing to negotiate and refusing to sell the subject Property to him.

95. Resulting from the collusion with SPM Defendants, APP Defendants are further attempting to take more than $31,000.00 in funds from the Plaintiff that he has used to renovate the subject Property pursuant to his contract with APP (Exhibit B) that would contravene the settlement agreement in the related cases and frustrate the judgment of the court in these cases. Injunctive relief is due to protect the Court's judgments in the related cases.

96. APP Defendants gave the Plaintiff possession of the Property. They are now refusing to negotiate for the sale and to sell the Property in violation of the FHA/FHAA, and are attempting to eject the Plaintiff from the Property by an ejectment order by which Plaintiff could be ejected from the Property at any time, where notice of the ejectment (Exhibit F) has been served on the Plaintiff, in flagrant violation of the FHA/FHAA, causing imminent, devastating harms. The facts further establish that Defendants' conduct has been done with negligence and malice.

97. Defendants, who are discriminating against the Plaintiff and violating his rights under the FHA/FHAA by refusing to negotiate for the sale and by refusing to sell the Property to the Plaintiff based on his handicap and

impermissible background premises have no right to eject him from the Property. They were contractually bound to sell the property to him (Exhibit B) but have refused to sell based on this admitted discrimination. The most severe injustice is their unlawful attempt to eject him from the property that they are bound to sell to him but are refusing to do so in violation of the FHA/FHAA as set out in this complaint.

## SECOND CLAIM FOR RELIEF
Violations of 42 U.S.C. § 1983

98. Plaintiff restates and incorporates by reference each paragraph previously alleged in this Complaint.

99. In acting as stated herein, APP Defendants acted in collusion with SPM Defendants in violating Plaintiff's constitutionally protected rights including his constitutionally protected property interests while collectively acting as state actors in violation of 42 U.S.C. § 1983 (hereinafter "Section 1983").

100. APP Defendants, in collusion with SPM Defendants, violated these rights by depriving him of his Constitutional property and liberty interests by refusing to sell and to negotiate for the sale of the Property by discriminating against the Plaintiff based on his handicap and disability and impermissible background reasons and thus divesting him of these constitutional rights under color of state law, and causing disparate impact and disparate treatment.

101.    APP Defendants are acting in collusion with SPM Defendants in violating these constitutional rights by attempting to eject him from the Property by discriminating based on his handicap and disability and impermissible background reasons under the FHA, FHA and Section 1983 et al.

102.    SPM Defendants are state actors as established in the related Cases. APP Defendants are state actors by acting in collusion with SPM Defendants.

103.    APP Defendants, 'in collusion with SPM Defendants, are attempting to deprive Plaintiff of his constitutional property interests and eject the Plaintiff from the Property that they are refusing to sell and to negotiate to sell to the Plaintiff in violation of the FHA, FHAA, Section 1983, et al., where Plaintiff's ejectment could occur at any time and cause devastating harms and injuries to the Plaintiff.

104.Defendants, who are discriminating against the Plaintiff and violating his rights under the FHA/FHAA by refusing to negotiate for the sale by refusing to sell the Property to the Plaintiff based on his handicap and impermissible background premises have no right to eject him from the Property. They were contractually bound to sell the property to him (Exhibit B) but have refused to sell based on this discrimination. The most severe injustice is their unlawful attempt to eject him from the property that they are bound to

sell to him but are refusing to do so in violation of the FHA, FHAA and Section 1983, et al., as set out in this complaint.

105.    By so acting, the Defendants have violated and are continuing to violate Plaintiff's constitutional rights under color of state law in violation of the FHA/FHAA and Section 1983.

### THIRD CLAIM FOR RELIEF
Discriminatory Housing Practices under 42 U.S.C. §3604(a) & (f)
Discrimination, Disparate Impact and Disparate Treatment

106.    Plaintiff restates and incorporates by reference each paragraph previously alleged in this Complaint.

107. APP Defendants are refusing to negotiate for the sale of the Property after admitting in writing and on oath that the reasons are discriminatory under the FHA/FHAA based on Plaintiff's handicap and based on discriminatory and impermissible reasons pursuant to a "google search" (Exhibit E), to wit:

> "Further investigation revealed a lengthy criminal and litigious on the part of Mr. Pickard. At that point, APP made the decision to cease further negotiations as to any potential new Agreement."
> (see Exhibits D & E.)

As stated above, any search of the public record alone, that is readily available also at one's fingertips especially for attorney Defendants Miner and Southern, including particularly the related Cases that are the most recent, informs that the Defendant is handicapped and disabled and that his criminal history is rooted

in his mental health handicap and disability whereby Defendants' refusal to negotiate for the sale of the Property is based on Plaintiff's handicap and disability in violation of 42 U.S.C. §3604(a). The FHA/FHAA imposes the affirmative duty on a seller to base decisions regarding negotiations for the sale of any dwelling on nondiscriminatory premises, and not as in this case based on arbitrary and/or blanket criminal-based criteria and restrictions that constitute discrimination under the FHA/FHAA.

108.  As set out above, even if the only consideration is criminal history alone, Defendants are refusing to negotiate for the sale of the subject Property based on arbitrary, blanket criminal-based criteria and restrictions that, as stated above, constitute discrimination in violation of the FHA/FHAA.

109.     Defendants  Gale  and  Southern,  among  others, participated in a conference call with Plaintiff and Mr. Holmes in which they asserted further discriminatory premises regarding their refusal to negotiate and to sell the Property to the Plaintiff.

110.     As stated above, any search of the public record alone, that is readily available also at one's fingertips especially for Defendants Miner and Southern, including particularly the related cases that are the most recent, informs that the Defendant is handicapped and disabled and that his criminal history is rooted in his mental health handicap and disability. Defendants' refusal to negotiate for the sale of the Property is

41

based on this handicap and disability in violation of 42 U.S.C §3604(a).

111.    The FHA/FHAA imposes the affirmative duty on a seller to base decisions regarding negotiations for the sale of any dwelling on nondiscriminatory premises, and not as in this case based on arbitrary and/or blanket criminal-based criteria and restrictions that constitute discrimination under the FHA/FHAA.

112.    Again, even if the only consideration is criminal history alone, Defendants are refusing to negotiate for the sale of the subject Property based on arbitrary, blanket criminal-based criteria and restrictions that, as stated above, constitute discrimination in violation of the FHA/FHAA.

113.    Defendants Gale and Southern, among others, participated in a conference call with Plaintiff and Mr. Holmes in which they asserted further discriminatory premises regarding their refusal to negotiate and to sell the Property to the Plaintiff, all resulting in disparate impact and treatment.

114.    Defendants gave the Plaintiff possession of the Property in the sales contract with him (Exhibit B). They are now refusing to negotiate to sell in violation fo the FHA and FHAA and are attempting to eject the Plaintiff from the Property and have obtained an ejectment order (Exhibit F) by which he could be ejected and

forcibly removed from the Property at any time, where the notice of ejectment has been served in flagrant violation of the FHA/FHAA causing imminent and irreparable harm.

115. Defendants are discriminating against the Plaintiff and violating his rights under the FHA/FHAA by refusing to sell the Property to the Plaintiff based on this handicap and based on impermissible background premises.

116. They have no lawful right to eject him from the property,

117. They were contractually bound to sell the property to him (Exhibit B) but have refused to sell to him based on this discrimination.

118. The most severe injustice is their unlawful attempt to eject him from the property that they are bound to sell to him but are refusing to do so in violation of the FHA/FHAA as set out in this complaint.

## FOURTH CLAIM FOR RELIEF
### Discriminatory Housing Practices under 42 U.S.C. §3604(a) & (f)
### Discrimination, Disparate Impact and Disparate Treatment

119. Plaintiff restates and incorporates by reference each paragraph previously alleged in this_ Complaint.

120. APP Defendants are refusing to sell the subject Property to the

43

Plaintiff based on discriminatory housing practices. They admit in writing and on

oath that they are refusing to sell based on discriminatory and impermissible

reasons in writing and on oath pursuant to a "google search", to wit:

> "Further investigation revealed a lengthy criminal and litigious
> history on the part of Mr. Pickard. At that point, APP made the
> decision to cease further negotiations as to any potential new
> Agreement." (see Exhibits D & E.)

As stated above, any search of the public record alone, that is readily available

also at one's fingertips including particularly the most recent related cases,

inform that the Defendant is disabled and that his criminal history is rooted in

his mental health disability, and hence the Defendants are refusing to sell the

Property to the Plaintiff based on his handicap and disability in violation of 42

U.S.C. §3604(a). As stated above, the FHA/FHAA imposes the affirmative

duty on a seller to base decisions regarding the sale of any dwelling on

nondiscriminatory premises, and not as in this case based on arbitrary and/or

blanket criminal-based criteria and restrictions that constitute discrimination

under the FHA/FHAA.

121. Again, even if the only consideration is criminal history alone,

Defendants are refusing to sell the subject Property based on arbitrary, blanket

criminal-based criteria and restrictions that, as stated above, constitute

discrimination in violation of the FHA/FHAA.

122. Defendants gave the Plaintiff possession of the Property in the sales

44

contract with him (Exhibit B). They are now refusing to sell and are attempting
to eject the Plaintiff from the Property and have obtained an ejectment order
by which Plaintiff could be ejected and forcibly removed from the Property
at any time, where notice of the ejectment (Exhibit F) has been served on the
Plaintiff, in flagrant violation of the FHA/FHAA, causing devastating harms and
injuries to the Plaintiff including disparate impact and treatment.

### FIFTH CLAIM FOR RELIEF
Discriminatory Housing Practices under 42 U.S.C. §3605(a)

123. Plaintiff restates and incorporates by reference each paragraph
previously alleged in this Complaint.

124.       Defendants APP, Cone, Gale, Bellamy, Doe and Terra Echelon are
persons and entities whose business is in engaging in real-estate and real-estate
related transactions. As set out in the previous paragraphs, said Defendants are
discriminating against the Plaintiff by refusing to make available the real estate
transaction and the terms and conditions of this transaction per the contract with
Plaintiff (Exhibit B) due to his handicap as well as due to discrimination
based on arbitrary, blanket criminal-based criteria and restrictions in violation
of 42 U.S.C. §3605(a).

125. Defendants gave the Plaintiff possession of the Property under the

45

terms and conditions of this contract and transaction (Exhibit B). They are now refusing to make this transaction and the terms and conditions set out in the contract and transaction that include the fact that they gave the Plaintiff possession of the Property. They are attempting to eject the Plaintiff from the Property in violation of this section of the FHA/FHAA and have obtained an ejectment order by which Plaintiff could be ejected from the Property at any time, where notice of the ejectment (Exhibit F) has been served on the Plaintiff, in flagrant violation of the FHA/FHAA, causing imminent and devastating harms and injuries to the Plaintiff.

126. These discriminatory housing practices are indefensible for persons and entities such as the APP Defendants, and particularly the retaliation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief and judgment against the Defendants as follows:

## I.    Equitable Relief:

1. Issuance of an order that Defendants cease their discrimination and retaliation;

2. Issuance of an order that Defendants cease from refusing to sell the property to him and to sell the property to him subject to the award of

monetary damages set out below to compensate for the greatly increased cost to purchase the property due to the delay caused by the Defendants since 2021;

3. Issuance of an order that they cease from their efforts to eject and dispossess him of the subject Property resulting from their discrimination and retaliation against him in violation of the FHA/FHAA, Section 1983, et al.

## II.   Declaratory Relief:

4, Issuance of a declaratory judgment declaring that Defendants' admitted discriminatory acts as set out in Exhibits C, D & E that violate the FHA/FHAA and Section 1983 (reserving request for injunctive relief).

5. Grant the compensatory and punitive damages herein requested.

## III.   Compensatory & Punitive Relief:

6. Judgment and award of compensatory damages in the amount not less than $291,155.00 that is the increased cost of purchasing the home caused by the Defendants' refusal to sell the property and delays in violation of the FHA/FHAA and Section 1983.

(a) In December, 2021, when these violations began to accrue, the interest cost to purchase the home was $173,266.00[4].. This cost has increased to $464,421.00.[5]

(b) The net increase in cost to purchase the home caused by the Defendants' discrimination, retaliation and delays at present is $291,155.00. It is therefore just that this amount be set as the minimum amount of compensatory damages.

(c) Plaintiff prays for additional compensatory damages on proof and as accrued during the course of this litigation.

(d) This ordeal has taken a heavy toll on the Plaintiff in mental and emotional distress, where he has been facing ejectment, imminent homelessness and severe harms for an inordinately protracted period of time and other related harms. Plaintiff therefore seeks treble punitive damages of $873,465.00 or such amount as specifically authorized for awards adjudicated under the FHA/FHAA and Section 1983, et al.

(f) Plaintiff seeks treble exemplary damages or such amount as specifically authorized for awards adjudicated under the FHA/FHAA and Section 1983, et al.

48

7. Award granting such further relief as the Court may deem just and equitable.

Respectfully submitted on this 7th day of February, 2025.

William M. Pickard III, Pro Se
4825 Clairmont Ave S.
P. O. Box 101
Birmingham, AL 35201-0101
(205) 586-9055
*marshall3d@hotmail.com*

---

[4] Approved loan amount of $334,636@ 3% x 30 years.
[5] Approved loan amount of $334,646@ 6.97% (Average FHA Loan Rate as of 02/2025) x 30 years

FILED
2023 Nov-14 PM 03:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## *Highland Manor Apartments*



2040 Highland Avenue
Birmingham, Alabama 35205
Phone: (205) 933-7543
Direct line and fax (205) 639-5148

03/17/2021

To Whom it May Concern

Please allow this correspondence to serve as the complete and entire reference for William Pickard. Mr. Pickard has been a tenant at Highland Manor since March 13, 2019. It is our understanding he plans to end his tenancy, without penalty, on or before March 29, 2021.

Sincerely,

Deborah Wren

**Deborah Wren, Regional Property Manager**

**Highland Manor Apartments**

2040 Highland Ave. | Birmingham, AL 35205

(205) 933-7543 | Fax (205) 933-7691

highlandmanormgr@spm.net

*Professionally managed by SPM Property Management | www.SPM.net*



Exhibit "A"

AGREEMENT OF SALE

This Agreement of Sale (hereinafter "Agreement") is made by and between the Parties of <u>William M Pickard III</u>, an Alabama Resident ("Purchaser"), and <u>American Pride Properties, LLC</u>, a Delaware Limited Liability Company ("Seller"), on this <u>4th</u> day of March, 2021. The Parties hereby agree to the following terms.

1.  Offer to Purchase

    The undersigned, William M Pickard III ("Purchaser"), hereby offers and agrees to purchase from American Pride Properties, LLC ("Seller") land and premises situated in City of Birmingham, County of Jefferson, State of Alabama described as follows:

    LEGAL: LOT 9 BLK 6 CLAIRMONT ADD TO FOREST PARK
    PARCEL NO: 23 00 33 2 001 010.00

    also commonly known as 4825 Clairmont Ave (the "Property"), subject to existing restrictions of record, easements for public utilities and driveways, and zoning ordinances, if any.

2.  Purchase Price & Closing Place

    Upon execution of this Agreement and the return of a fully executed original of the same, Purchaser shall pay to <u>American Pride Properties, LLC</u>, Two Hundred Fifty Five Thousand and .00/100 Dollars ($255,000.00), such amount representing the total purchase price. Purchaser and Seller agree that the Title Company will be: Smith Closing & Title, Wood Point I, 1855 Data Drive Suite 255, Hoover, AL 35244, HUD Title ID SMITHC0001.

3.  Title, Renovations and Financing

    by a licensed contractor

    Seller has filed to quiet title to the Property which is expected to be finalized in May, 2021. The Title Company states that upon grant of quiet title, that a Title binder and Title insurance will be facilitated. Purchaser to make renovations at Purchaser's sole non refundable expense as necessary for the property to comply with FHA or conventional pre-financing inspections and to increase the appraised value of the home as may be needed to attain an appraised value of not less than $255,000.00. All renovations and improvements will be permanent and shall inure to the benefit of the Seller and only to the Purchaser after closing under this agreement. Purchaser to deposit <u>non-refundable</u> escrow of One Thousand Five Hundred 00/100 Dollars ($1,500.00) to the Title Company within 5 days of executed contract and to deposit escrow of an additional Three Thousand Five Hundred 00/100 Dollars within 5 days of approval of inspections and sufficient appraisal of the property by the mortgagor. The initial <u>non-refundable</u> deposit will apply to the purchase price at closing or will be paid regardless to the Seller.

_____ Purchaser Initial                              _____ Seller Initial

$Exhibit "B"$

4.     Conveyance of Title

American Pride Properties, LLC, shall convey all of its right, title and interest in the Property to William M Pickard III by Special Warranty Deed. Closing shall take place within 15 days of Seller clearing title and final approval and scheduling of financing by the mortgagor. Each party will be responsible for their respective closing costs. The Seller shall deliver and the Purchaser shall accept possession as necessary to complete renovations.

5.     Encumbrance Removal

Property is being sold in its "as-is, where is" condition. No mortgages or deeds of trust originated by the Seller exist on the property title. All other liens and encumbrances (to include redemption period if any) that exist or may exist against the title or property shall be cleared through title confirmation.

6.     Broker's Commission

There will be no real estate broker therefore there shall be no commission paid out of the Purchase Price.

7.     Acceptance Time

The Purchaser agrees that this offer is irrevocable for three (3) days from the date after presentation to Seller and after full execution.

8.     Notices

All notices, deliveries, or tenders given or made in connection herewith shall be deemed completed and legally sufficient if mailed or delivered to the respective party for whom the same is intended at his address herein set forth.

Seller                                              Purchaser
American Pride Properties, LLC          William M Pickard III
225 S Westmonte Dr, Suite 3050         2040 Highland Ave S #401
Altamonte Springs, FL 32714             Birmingham, AL 35205

9.     Construction

The pronouns and relative words herein used are written in the masculine and singular only. If more than one join in the execution hereof as Seller or Purchaser, or either be of the feminine sex or a corporation, such words shall be read as if written in plural, feminine or neuter, respectively. The contract is assignable and the covenants herein shall bind the assigns, heirs, personal representative, administrators, executors, and successors of the respective parties.

_____ Purchaser Initial                        _____ Seller Initial

10.   No Seller Warranties or Representations

Purchaser acknowledges and agrees that Purchaser is purchasing the property in it's "as is, where is" condition, with all faults, if any, and without any warranty, expressed or implied.

Other than expressly set forth herein, neither Seller nor any agents, representatives, or employees of Seller have made any representations or warranties, direct or indirect, oral or written, express or implied, to Purchaser or any agents, representatives or employees of Purchaser with respect to the condition of the Property, its fitness for any particular purpose or its compliance with any laws, and Purchaser is not aware of and does not rely upon any such representation. Purchaser acknowledges that Purchaser has inspected the property and is satisfied with the conditions found thereon and therein.

11.   Declaration Regarding Citizenship

Seller is not a "Foreign Person" as defined in (FIRPTA) IRC 1455.

12.   Declaration of Acceptance of Property "As Is"

Seller makes no claim, guarantee or warranty as to the condition of the property as it relates to environmental conditions, survey matters or any other condition of the property. Purchaser understands that Purchaser is purchasing said property in it's "as is, where is" condition including any defects, if any. Purchaser acknowledges that Seller obtained property by Tax Default Foreclosure and has no knowledge of safety or condition of property. Seller has never resided in property.

REMAINING PAGE INTENTIONALY LEFT BLANK

_____ Purchaser Initial                                    _____ Seller Initial

Purchaser acknowledges that Seller obtained property by Tax Default Foreclosure and has no knowledge of safety or condition of property. Seller has never resided in property.

The parties hereto shall rely solely upon the advice of their own counsel and experts as to the legal, tax and environmental consequences of this Agreement and shall rely on their legal counsel to draft and review this Agreement, and all related documents to be used in conducting the sale/purchase of the Property. It is further understood that the Seller has made no representation as to the acceptability by the local government authorities of Purchaser's intended use of the Property or its ability to obtain a Certificate of Occupancy or other requisite governmental approvals or licenses.

PURCHASER:

William Marshall Pickard III        Date: March 4, 2021
Printed Name                Signed Name

IN THE PRESENCE OF WITNESS:

Name: Douglas William Gurney    Signed:                    Date: March 4, 2021

Acceptance of Offer

TO THE ABOVE NAMED PURCHASER:

The foregoing offer is hereby accepted and Seller agrees to sell the Property upon the terms stated in the Agreement of Sale.

By the execution of this instrument, the Seller acknowledges the receipt of a copy of this Agreement.

SELLER:
American Pride Properties, LLC

Date: March 4, 2021

By: Tiffany Cone,
Attorney-In-Fact

Purchaser Initial                Seller Initial

# NELSON MULLINS

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
ATTORNEYS AND COUNSELORS AT LAW

Megan L. Ware-Fitzgerald
(Admitted In WV & AL)
T 304.526.3511
megan.fitzgerald@nelsonmullins.com

949 Third Avenue | Suite 200
Huntington, WV 25701
T 304.526.3600  F 304.526.3599
nelsonmullins.com

October 20, 2021

**Via USPS and Email**
Jeffrey B. Holmes, Esq.
Boles Holmes White LLC
The Farley Building
1929 3rd Avenue North, Suite 500
Birmingham, AL 35203
jholmes@bhpwlaw.com

     *Re:   4825 Clairmont Avenue, Birmingham, AL 35222*

Dear Jeff:

As you know I represent American Pride Properties, LLC ("APP") in negotiations for the sales transaction for property located at 4825 Clairmont Avenue, Birmingham, AL 35222 (the "Property"). It is my understanding that you now represent William Marshall Pickard ("Marshall") and James Davis ("James") as it pertains to the Property. Myself and my client have struggled to understand your clients' position as it relates to finalizing and closing the sale of the Property. Marshall, through you, contends that he assigned the Agreement of Sale dated March 4, 2021 ("Sale Agreement"), enclosed herewith as **Exhibit 1**, to James by way of the Assignment Addendum dated April 24, 2021 ("Assignment") and enclosed herewith as **Exhibit 2**. However, after the alleged Assignment, Marshall signed a Special Addendum on July 15, 2021 ("Addendum 1"), enclosed herewith as **Exhibit 3**, and another Addendum on July 27, 2021 ("Addendum 2"), enclosed herewith as **Exhibit 4**, as the buyer. At no point in time in any conversations with my client, and even in executing the above-referenced Addendums – which were executed months after the alleged Assignment – did Marshall indicate that he was not the designated buyer and/or that he had assigned the contract. Despite the confusion and delay caused by your clients, all parties seem to be in agreement that closing this transaction under a new purchase agreement is the easiest and most cost effective way to resolve this matter; however, the parties seem to disagree as to the procedures that will lead to the desired end result. In order to work through these disagreements, my client has requested a conference call with myself, my client, and your clients, yet you and your clients have refused.

As you are well aware, our client is of the position that Marshall breached the Sales Agreement and subsequent Addenda (described in further detail below) when the closing did not occur by July

*Exhibit "C"*

Jeffrey E. Holmes, Esq.
Page 2 of 3

23, 2021. Further, APP believes that Marshall has misrepresented and concealed important facts related to this transaction on multiple occasions. First, Marshall revised the Sale Agreement to include language permitting the assignment of the contract at the end of a wholly unrelated paragraph entitled "Construction" that specifically dealt with the definition of pronouns and relative words and had nothing to do with assignments or anything related to an assignment of the contract. Moreover, Marshall circulated the revised Sale Agreement to my client and specifically identified other inconsequential changes related to title and financing made in "subparagraph 3" with no mention of any additional changes to paragraph 9, see enclosed an email communication from Marshall to my client, enclosed herewith as **Exhibit 5.** Marshall's forthright email explaining the changes reasonably led my client to believe that the only revisions to the contract were to "subparagraph 3", which was inaccurate. Second, and addressed briefly above, Marshall signed both above-referenced Addenda as the designated buyer when, in fact, he had already assigned the Sales Agreement months prior. Not only did Marshall hold himself out to be the buyer to APP, but also to the title company who was conducting the closing. Marshall was engaged in multiple communications with the title company towards the end of June wherein he never once mentioned James or any assignment and advised he was keeping his schedule open for the closing – leading APP, and likely the title company, to believe he was the buyer. Lastly, despite multiple communications with APP months after the alleged Assignment, Marshall never once told the seller, APP, about the assignment even while negotiating several closing extensions. APP had no idea who James even was until the lender, who it seems was also confused, alerted APP to James existence and the alleged Assignment.

Despite all of the confusion – for lack of a better word – directly caused by Marshall, I have worked with my client to come up with terms that are acceptable not only to APP, but we hope also to Marshall and James. The following are the terms that APP is willing to accept to close this transaction:

- A Settlement and Release agreement executed by Marshall, James, and APP stating that the prior Sales Agreement and its subsequent Addenda are null and void and releasing any and all claims held by Marshall, James, and/or APP, related to the original Sales Agreement and its subsequent Addenda; and
- Execution by Marshall, James, and APP of a new Sales Agreement to contain the following terms:
  o Closing to occur by close of business on November 5, 2021;
  o Purchase price of $280,000, the increase to compensate APP for legal costs associated with counsel for APP drafting the Settlement and Release Agreement and new Sales Agreement, and other costs associated with this transaction being so delayed;
  o Should Marshall and/or James fail to close by the deadline, the contract becomes null and void and APP is automatically released from any and all liabilities, loss, damages, and costs that Marshall and/or James have and/or may have incurred. In good faith recognition of the renovations done by James, should Marshall and/or James default, APP is willing to

Jeffrey E. Holmes, Esq.
Page 3 of 3

> pay James half of the costs incurred for renovations that James can prove by legitimate receipts from licensed contractors (this amount to be agreed upon and stated in the new Sales Agreement); and
> o Possession of the property to transfer to James and Pickard at closing.

The prior Sales Agreement gave your clients access to the Property for the sole purpose of making repairs/improvements. As the sale has not yet occurred and APP is still the sole and only owner of the Property, as of the date of this letter APP hereby formally revokes the access previously granted to Marshall – and allegedly assigned to James – to the Property. As APP is the sole owner of the Property and neither Marshall nor James have any rights to the Property or rights to the possession of the Property, the locks have been changed. However, should James and/or Marshall have any personal property in the Property, they may coordinate access with APP to retrieve their items within the next fifteen (15) days. Only personal property not affixed to the house or premises may be removed.

APP has tried to work with your clients in every possible way to close this transaction, including giving several extensions and accepting the undisclosed assignee. Your clients have failed to close and at a minimum misled our client on numerous occasions. These terms are our client's last-ditch efforts to close this transaction before moving on to new buyers. We hope that your clients will accept the terms as outlined above and work expeditiously toward closing.

Very truly yours,

Megan L. Ware-Fitzgerald

Enclosures



LAW OFFICE OF J. TODD MINER, LLC

December 7, 2021

**VIA ELECTRONIC MAIL**

Jeffrey E. Holmes, Esq.
Boles Holmes White LLC
The Farley Building
1929 3rd Avenue North, Suite 350
Birmingham, Alabama 35203

Re:   4825 Clairmont Avenue, Birmingham, Alabama 35222
      Our Client:   American Pride Properties, LLC
      Your Clients: William M. Pickard & James R. Davis

Dear Jeff:

In response to your latest e-mail, I think the pertinent "circumstances" have been discussed at length. APP has made every effort to resolve this matter under reasonable terms, even after the discovery of the purported assignment. In the midst of negotiations, APP discovered that the locks at the property had been changed and that your clients were residing in the home without authority. Further investigation revealed a lengthy criminal and litigious history on the part of Mr. Pickard. At that point, APP made the decision to cease further negotiations as to any potential new agreement. The original agreement expired in late July and APP when the stated buyer and his assignee were unable to close. Accordingly, APP has been under no obligation to continue any efforts to close any sale of the Property to Pickard, Davis or otherwise. This was not a decision based in any discriminatory intent protected by any "housing laws" as suggested by your e-mail, but instead an informed decision in light of your client's prior actions during extended negotiations. Further, your clients do not properly occupy the property under any circumstance and continue to detain APP's property after demand was made to deliver possession to APP.

You asserted that the lender provided a notice stating their willingness to close; however, as I previously reported to you APP never received any such notice of a loan final approval, and the document you shared with me was merely an indication of closing costs which can be presented at the mere application of a loan. Furthermore, APP received no response to its specific inquiry as to how the transaction could be properly closed as proposed by the purchaser(s). As for this attachment, I cannot agree that the manner in which your clients attempted to fashion the proposed transaction is immaterial. It would seem that the lender had no better idea of their intentions than any of us. Interestingly, you do not address any right to possession of your clients. As a result of their continued occupancy and failure to deliver possession pursuant to prior demands made on

Exhibit "D"

behalf of APP, I have been instructed to proceed with an action to recover possession and will do so immediately.

Finally, you make reference to a counterclaim that would presumably be filed in response to our claim for possession. My client views these threats as mere efforts of attempted leverage in continued efforts to delay. If you haven't already, take a look at your client's legal history; he repeatedly ties up property owners and lives in the subject property without permission during the dispute. We take the position that any claim asserted in an attempt to enforce an expired agreement, to seek performance of any alleged subsequent agreement that simply was not agreed upon, or to further delay proper recovery of possession by APP in any manner without good cause without any legal basis would be frivolous and therefore sanctionable. Please take notice that any such claim asserted would require APP to pursue recovery of fees and costs under the Alabama Litigation Accountability Act.

Based upon the foregoing, please advise your clients to deliver possession to APP immediately in order to avoid unnecessary protracted litigation and to avoid further loss incurred by APP

Sincerely,

J. Todd Miner

JTM

cc:     American Pride Properties, LLC

**In The Matter Of:**

**American Pride Properties, LLC V. William M. Pickard et al**

Proceedings

*April 25, 2023*

Bain & Associates Court Reporting Services, Inc.
505 20th Street North
Suite 1250
Birmingham, AL 35203
Toll Free 1.888.326.0594

Exhibit "E"

1 being honest to us.

2           We never allowed them possession to move

3 in and to live in it.  And here he was living in our

4 property.  So we just said, "Enough is enough."  We

5 were no longer interested in selling.

6 Q.        So at this point, you've learned that

7 the -- for the first time at some point that the

8 agreement had been allegedly assigned?

9 A.        Yes.

10 Q.        And then now you realized that the

11 possession that was a limited possession right, he

12 had actually moved in and had been living in the

13 property?

14 A.        Yes.  Well, we learned that our contract

15 was changed and we weren't made aware adding that it

16 was assignable.  We learned of the assignment.  And

17 then we learned that he was living in the property.

18 I mean, that's just a lot for a seller.  So we

19 weren't interested in moving forward.

20 Q.        Did you do anything else at that time as

21 far as -- around the time of halting the contract?

22 A.        Yes.  We did a Google search of the

23 parties' names.

24 Q.        Of the what?

25 A.        We did like a Google search to try to

Page 54

1 figure out who are we dealing with.  Because we felt

2 like the other side wasn't being honest.  We just

3 did a search and did research to see what type of

4 people we were dealing with.

5 Q.          And without getting into details, did

6 you like what you found?

7 A.          No, not at all.

8 Q.          And at that time, you halted

9 negotiations?

10 A.          Yes.

11 Q.          Did Ms. Fitzgerald continue to

12 communicate with local counsel here?

13 A.          She was communicating with them.  But at

14 that point, she let them know there would -- that

15 there would be no further communication on a sale

16 and that we would eventually be filing for

17 possession, an ejectment action.

18 Q.          And did you at that time engage local

19 counsel?

20 A.          Yes.

21 Q.          And that would be me?

22 A.          Yes.  And here we are.

23 Q.          And then communications at that point

24 between counsel were basically based on what?

25 A.          Prior to that?

Page 55

# EXHIBIT E

205 325 5725

## EVICTION NOTICE

Jefferson County Sheriff's Office
Civil Division/Evictions
2200 Rev. Abraham Woods Jr. Blvd., Birmingham, Alabama 35203

OCCUPANTS: WILLIAM M PICKARD

This is a Final Notice that the property located at: 4825 CLAIRMONT AVENUE SOUTH BIRMINGHAM AL 35222 is subject to a Court Ordered Eviction. This is your only notice and you are *encouraged* to voluntarily vacate the property. Otherwise, when the Deputies return you will be evicted. For additional information contact your attorney or the Courts using the case number referenced below.

Court Case Reference: CV-2021-903550
Campbell-Deputy

Exhibit "F"