FILED

2026 Mar-10 PM 04:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM M. PICKARD, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No.: 2:23-cv-1545-AMM** |
| **AMERICAN PRIDE** | ) | |
| **PROPERTIES, LLC,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This case comes before the court on several motions, Docs. 28, 29, 30, 33, 36, 41, 60, 62, 65, 66, 69, 70, 72, 73, 74, 75. For the reasons explained below, the court **GRANTS** the SPM Defendants' motion to dismiss. The court also **DISMISSES** the claims against the APP Defendants. Accordingly, the remaining motions are **DENIED AS MOOT**.

### I.    BACKGROUND

These are the material facts alleged in plaintiff William Marshall Pickard's complaint:

In 2019, Mr. Pickard moved into an apartment managed by defendant SPM, LLC. Doc. 24 at 17. He then "became embroiled in conflicts and disputes with SPM, *et al.* regarding discrimination to which he was subjected that resulted in litigation from June 10, 2019 until February 18, 2021 when the case was settled." *Id.* at 18.

Under the settlement, "SPM agreed to provide a 'neutral reference' to any prospective landlord or entity requesting a reference." *Id.* The reference was to include only the dates of his tenancy. *Id.*

After the settlement, Mr. Pickard looked for other housing. *Id.* at 19. Presbyterian Manor denied Mr. Pickard's housing application, and "he discovered [the rejection] to be based on a derogatory reference given by a prior landlord (SPM)." *Id.* He filed a complaint with the Department of Housing and Urban Development "and received a monetary settlement from Presbyterian Manor." *Id.* at 20.

Mr. Pickard then discovered "a home located at 4825 Clairmont Avenue South" (the "Clairmont Property"). *Id.* The Clairmont Property "was obtained by Defendant American Pride Properties, LLC . . . by Tax Default Foreclosure." *Id.* "APP was engaged in the process to quiet title to the [Clairmont] Property." *Id.* "On March 9, 2021, [Mr. Pickard] signed a contract with APP" under which Mr. Pickard agreed to purchase the Clairmont Property for $255,000.00. *Id.* The contract provided "that closing would be contingent upon clearing title and final approval and schedule of financing." *Id.* at 21.

A few months later, "the property appraisal was issued valuing the property at $355,000.00 that was $100,000.00 more than [Mr. Pickard's] Contract price." *Id.* "Quiet title had been granted, but not yet recorded . . . ." *Id.* "It was . . . at this point

that APP made efforts to . . . get [Mr. Pickard] to agree to impossible terms for closing and to set an unreasonable time for the expiration of the Contract, which [Mr. Pickard] refused to agree to." *Id.* at 22. Mr. Pickard "ha[d] made major renovations that total more than $31,000.00." *Id.* at 21.

On August 26, 2021, APP "unilaterally declared the Contract to be void." *Id.* at 22. So Mr. Pickard hired attorney Jeff Holmes to navigate the situation. *Id.* "Between August 26, 2021 and December 7, 2021, Mr. Holmes made best efforts to obtain a resolution and facilitate the closing of the sale." *Id.* Mr. Holmes "obtained a verbal commitment" from APP's attorney to sell the Clairmont Property for $270,000.00. *Id.* After a subsequent conference call, APP's attorney "presented a written offer from APP to sell at a price of $280,000.00." *Id.* at 23. That same day, two of the defendants associated with APP "attempted to unlawfully remove and lock [Mr. Pickard] out of the [Clairmont] Property." *Id*. And later, APP informed Mr. Pickard that APP was refusing to sell the Clairmont Property because APP investigated Mr. Pickard and discovered a "lengthy criminal and litigious history on the part of Mr. Pickard." *Id.* at 23–24. According to Mr. Pickard, "his criminal charges were the result of his mental health disability," *id.* at 25, namely, his "crippling episodes of acute depression and mania," *id.* at 26. Accordingly, Mr. Pickard concluded that the defendants discriminated against him "due to his handicap and disability." *Id.* at 28.

Mr. Pickard contends that SPM was also involved in this discrimination because APP referred to Mr. Pickard "repeatedly t[ying] up property owners and liv[ing] in the subject property without [permission] during the dispute," a fact which Mr. Pickard alleges could only have come from SPM. *Id.* at 32–33. So "[i]t is inescapable that derogatory information was conveyed by SPM to APP including such allegations of repeated landlord-tenant conflicts." *Id.* at 33.

Mr. Pickard explains that APP filed to eject him, and "[t]his ejectment is on appeal, but Defendant APP has obtained an ejectment order," *id.* at 33–34, which Mr. Pickard attached as an exhibit to his complaint, *id.* at 64.

After APP filed to eject Mr. Pickard, the Circuit Court of Jefferson County, Alabama held a bench trial and entered judgment in favor of APP, awarding possession of the Clairmont Property to APP.[1] *American Pride Properties, LLC v. William M. Pickard*, Case No. 01-cv-2021-903550.00 (Circuit Court of Jefferson County 2021) ("*Ejectment Action*"), Doc. 265. The judgment held that the Agreement of Sale did not authorize Mr. Pickard to occupy the Clairmont Property

---

[1] "[A] court may take notice of another court's order only for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (cleaned up). And "a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* (cleaned up). The court takes judicial notice of the state court action for the purpose of analyzing whether it is proper for this court to intervene in ongoing state court litigation regarding the same matters.

as a resident and that Mr. Pickard had "improperly detained the Property to the detriment of plaintiff APP, since March 2021." *Id.* ¶ 2. Finally, the judgment held that the Agreement of Sale expired on July 30, 2021, after Mr. Pickard failed to close. *Id.* ¶ 3.

Mr. Pickard and his co-defendant appealed the judgment to the Supreme Court of Alabama. *Ejectment Action*, Doc. 267. The Supreme Court of Alabama deemed the judgment nonfinal because the circuit court had left APP's monetary damages open for later consideration, so the case returned to the circuit court. *Id.* at Doc. 334. The circuit court entered an order rendering the judgment final and dismissing the damages claim. *Id.* at Doc. 355. Mr. Pickard once again appealed. *Id.* at Doc. 361.

While the state court case was pending, Mr. Pickard brought suit in this court against SPM and a host of individuals associated with SPM[2] ("the SPM

---

[2] Defendant Deborah Wren is sued for "submit[ing] the neutral letter of reference . . . under the settlement agreement" while working as an employee of SPM. Doc. 24 at 11. Defendant Jennifer Scott is sued for actions taken while "Director of Compliance for Defendant SPM," pursuant to "her responsibility and duty to ensure compliance with federal and other programs." *Id.* at 12. Defendant Elisabeth Woodring is sued for actions taken on behalf of SPM while "an employee of Defendant SPM responsible for risk management." *Id.* at 12–13. Defendant Charee Russell is sued as an employee of SPM "responsible for operational results and services to regulatory agencies and residents." *Id.* at 13. Defendant William B. Weldon is the President of SPM and is sued "under respondeat superior" for the actions of "SPM actors." *Id.* Defendant Mitchell G. Smith is sued as an employee of SPM "[i]n his capacity as director of client services and operations" and "in his capacity as Executive Vice President of SPM." *Id.* at 14.

Defendants"), as well as APP and a host of individuals associated with APP[3] ("the APP Defendants"). *See* Doc. 24 at 8–17. He numbered five claims for relief: (1) "Collusion in violating Settlement Agreement"; (2) "Violations of 42 U.S.C. § 1983"; (3) "Discriminatory Housing Practices under 42 U.S.C. §3604(a) & (f) Discrimination, Disparate Impact and Disparate Treatment"; (4) "Discriminatory Housing Practices under 42 U.S.C. §3604(a) & (f) Discrimination, Disparate Impact and Disparate Treatment"; and (5) "Discriminatory Housing Practices under 42 U.S.C. §3605(a)." Doc. 24 at 36–47. He asked for various relief, including "[i]ssuance of an order that Defendants cease their discrimination and retaliation," "[i]ssuance of an order that Defendants cease from refusing to sell the property to him and to sell the property to him subject to the award of monetary damages," and "[i]ssuance of an order that they cease from their efforts to eject and dispossess him

---

[3] Defendant Tiffany M. Cone is sued for actions taken while "Vice-President of and 'attorney in fact' for [APP]" and "Vice-President of Terra Echelon, LLC." Doc. 24 at 10. Defendant Todd Miner is sued for actions taken while employed as "attorney for Defendant [APP]." *Id.* at 11. Defendant Douglas Q. Gale is sued for actions taken while employed as President of APP and President/Manager of Terra Echelon, LLC. *Id.* at 14. Defendant Megan L. Southern is sued for actions taken while employed "as attorney for [APP]." *Id.* at 15. Defendant Sonishari T. Bellamy is sued for actions taken while employed "as Asset Manager for [APP]." *Id.* Defendant Jane "Glenda" Doe is sued "as agent and realtor for Tiffany Cone." *Id.* at 16. Defendant Terra Echelon, LLC is sued for allegedly colluding with the other defendants in, among other things, "the unilateral and outrageously unlawful memo sent by [Ms.] Cone." *Id.* at 16–17.

of the subject [Clairmont] Property." *Id.* at 47–48. He also asked for compensatory, punitive, and treble damages. *Id.* at 48–49.

To his complaint, Mr. Pickard attached a letter that appears to be a reference from the apartment complex managed by SPM. *See id.* at 51. He also attached the "Agreement of Sale," *id.* at 52–55, two letters from APP's attorneys to Mr. Holmes, *id.* at 56–60, a two-page, marked-up screenshot of what appears to be a deposition transcript, *see id.* at 61–63, and the eviction notice from the state court proceeding, *id.* at 64.

The parties filed a flurry of motions, Docs. 28, 29, 30, 33, 36, 41, 60, 62, 65, 66, 69, 70, 72, 73, 74, 75. Among them, the APP Defendants, the SPM Defendants, and Todd Miner, each filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Docs. 28–30. Those motions are fully briefed. Docs. 47, 48, 49, 53, 55, 56.

To their motion, the APP Defendants attached a host of exhibits. Docs. 28-1 and 28-2 (Affidavit of Tiffany Cone, Limited Durable Power of Attorney for APP, Final Order of Default Judgment and Quiet Title, Agreement of Sale and Addendums, the order from the state court eviction proceedings, Affidavit of J. Todd Miner, and an Alacourt search for cases involving Mr. Pickard).

The SPM Defendants also attached a host of exhibits. *See* Docs. 30-1 to 30-5 (Declaration of Deborah Wren, the parties' previous settlement agreement, Alacourt

and PACER searches of civil and criminal cases involving Mr. Pickard, and Declaration of Charee Russell); *see* Doc. 38 (explaining that Doc. 30-2 is a copy of the parties' previous settlement agreement). To Mr. Pickard's opposition to the SPM Defendants' motion, he attached a Declaration of William M. Pickard III, Doc. 47-1, a letter from APP's attorney to Mr. Holmes, Doc. 47-2, and a copy of the settlement agreement, Doc. 47-3. Mr. Pickard's declaration restates his narrative of the facts and then walks through Ms. Cone's affidavit paragraph by paragraph, disputing her assertions. *See, e.g.*, Doc. 47-1 ¶ 63 ("In paragraph 2 of her affidavit . . . , she states . . . . This is not true.").

The court will address the APP Defendants and SPM Defendants separately.

## II.    LEGAL STANDARD

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint need not make "detailed factual allegations"; its purpose is only to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). To survive a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. To test the complaint, the court discards any "conclusory allegations," takes the facts alleged as true, *McCullough v. Finley*, 907

F.3d 1324, 1333 (11th Cir. 2018), and "draw[s] all reasonable inferences in the plaintiff's favor," *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). These facts and inferences must amount to a "plausible" claim for relief, a standard that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. A court "generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." *Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 637 (11th Cir. 2010).

## III.   DISCUSSION

### A. APP Defendants and Abstention

The court first considers whether to abstain from deciding the claims against the APP Defendants. "Abstention is a determination that the district court should abstain from exercising [its] jurisdiction." *Taveras v. Bank of Am., N.A.*, 89 F.4th

1279, 1285 (11th Cir. 2024) (cleaned up). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* (cleaned up). "District courts have a duty to adjudicate the controversies before them, and abstention is an extraordinary and narrow exception." *Id.* at 1285–86 (cleaned up). "A pending state court case ordinarily does not bar a federal case concerning the same dispute, and the potential for conflicting adjudications, standing alone, is not enough to justify abstention." *Id.* at 1286. "In limited and exceptional circumstances, certain principles of wise judicial administration do permit district courts to dismiss a federal suit due to the presence of a concurrent state proceeding." *Id.* (cleaned up).

"As a threshold matter, *Colorado River* abstention allows a federal court to stay a case only when federal and state proceedings involve substantially the same parties and substantially the same issues." *Id.* (cleaned up). "The issues and parties do not have to be identical to be substantially similar; if the standard required identical issues and parties, a party could easily circumvent abstention with creative pleading." *Id.*

"Once a court has determined that the proceedings involve substantially similar issues and parties, the court must weigh six factors to decide whether to abstain:

> (1) whether one of the courts has assumed jurisdiction over property,
> (2) the inconvenience of the federal forum,
> (3) the potential for piecemeal litigation,

(4) the order in which the fora obtained jurisdiction,
(5) whether state or federal law will be applied, and
(6) the adequacy of the state court to protect the parties' rights."

*Id.* "Courts may also consider the vexatious or reactive nature of either the federal or the state litigation as part of their abstention inquiry." *Id.* (cleaned up).

"These factors and considerations are not a mechanical checklist, and the abstention inquiry must be heavily weighted in favor of the exercise of jurisdiction." *Id.* (cleaned up). "No single factor is determinative, and the weight given to individual factors may vary from case to case." *Id.* "One factor alone can be the sole motivating reason for the abstention." *Id.* (cleaned up).

### 1. Substantially Similar Proceedings[4]

The issues and parties in the state proceedings and the federal proceedings against the APP Defendants are substantially similar, even though they are not identical. The claims in both the federal and state cases involve the disputed legality of APP's refusal to sell Mr. Pickard the Clairmont Property. The federal action asks the court to declare that the APP Defendants must "cease from refusing to sell the

---

[4] "[A] court may take notice of another court's order only for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation." *Jones*, 29 F.3d at 1553 (cleaned up). And "a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* (cleaned up). Here, the court will take judicial notice of the state court proceedings for the purpose of evaluating whether the court should abstain.

property to [Mr. Pickard] and to sell the property to him subject to the award of monetary damages" and that "they cease from their efforts to eject and dispossess him of the subject Property." Doc. 24 at 47–48. The enforcement of the sale agreement is also at the heart of the state litigation. *See Ejectment Action*, Docs. 2, 40, 265.

The parties to the state court proceedings and the APP Defendants in this case are substantially similar. Though Mr. Pickard includes numerous individuals in his federal complaint, "the only allegations of any conduct, wrongful or not, involve APP as an entity." Doc. 28 at 11. The individual defendants acted "at the direction of APP." *See, e.g.*, *id.* at 10. Accordingly, though Mr. Pickard's federal complaint names additional individual defendants not a party to the state action, his claims in both the state and federal actions are premised on actions taken by APP's employees at APP's direction. And Mr. Pickard advances no theory under which any individual defendant could be liable and APP would not be liable. Allowing Mr. Pickard to avoid abstention simply by adding individual defendants in name only would allow Mr. Pickard to "easily circumvent abstention with creative pleading." *See Taveras*, 89 F.4th at 1286.

Although Mr. Pickard's federal claims allege discrimination—an issue not raised in his state court counterclaims, the claims have a common nucleus: APP's allegedly improper conduct in refusing to sell him the Clairmont Property, *see*

12

*Ejectment Action*, Doc. 40. In both the state court and federal court, Mr. Pickard asserts that he is entitled to an order forcing APP to sell him the Clairmont Property. *See* Doc. 24 at 47–48; *Ejectment Action*, Doc. 40 at 26. Accordingly, although the individuals he names and the claims he raises are nominally different, the heart of the dispute and relief sought are the same in both courts. Accordingly, the court finds that the proceedings are substantially similar.

### 2. *Colorado River* Abstention Factors

The court discusses each *Colorado River* abstention factor in turn and finds that, on balance, they weigh in favor of abstention.

*First*, "[t]he first *Colorado River* factor asks if one court assumed jurisdiction over property before the other court." *Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1141 (11th Cir. 2013). "[T]his factor applies only where there is a proceeding in rem." *Id.* Because neither this case nor the state action is an in rem proceeding, this factor is neutral.

*Second*, "[t]he second factor concerns the inconvenience of the federal forum and focuses primarily on the physical proximity of the federal forum to the evidence and witnesses." *Id.* (cleaned up). Here, the federal forum and state forum are in the same geographic area, and the court has no reason to believe that one forum or the other is inconvenient. Therefore, this factor is neutral.

*Third*, the third factor "monitors the potential for piecemeal litigation." *Id.* at 1142. "Run of the mill piecemeal litigation will not do: this factor does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is abnormally excessive or deleterious." *Id.* (cleaned up). Though Mr. Pickard's claims in this court are labeled differently from his claims in the state court, the evidence on which the issues relies is the same. The Alabama court, in deciding the proper ownership of land within its state, unequivocally ruled that Mr. Pickard is not entitled to the Clairmont Property. *See Ejectment Action*, Doc. 265. Mr. Pickard asks this court to upend that ruling and force the transfer of the Clairmont Property in direct contravention of the Alabama court's ruling. Doc. 24 at 47–48.

Further, this court has serious questions about whether Mr. Pickard's federal claims against APP were compulsory counterclaims in the state court suit. *See* Doc. 28 at 18. As far as the court can tell, if Mr. Pickard is allowed to avoid those concerns by simply fracturing APP into its individual employees, piecemeal litigation is a near-certainty and there is no effective limitation on it. In that scenario, Mr. Pickard may simply add new individual employees each time he discovers a new claim arising from this singular attempted sale.

Further, Mr. Pickard's voluminous and lengthy filings in this case require the defendants to expend great resources to review and respond to each filing, while they

prepare for the proceedings in the underlying state court litigation. This is not the run-of-the mill preparation and efforts that attain in concurrent litigation. Put differently, the docket sheet in this case makes plain that "the circumstances enveloping th[e]se cases" have already precipitated abnormally excessive piecemeal litigation. *See Jackson-Platts*, 727 F.3d at 1142 (cleaned up). Thus, this factor weighs in favor of abstention.

*Fourth*, "[courts] ask which forum acquired jurisdiction first." *Id.* "What matters is not so much the chronological order in which the parties initiated the concurrent proceedings, but the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." *Id.* (cleaned up). Here, the state proceedings have been pending since 2021. *See Ejectment Action*, Doc. 1. The state court entered judgment in favor of APP and awarded APP possession of the Clairmont Property. *See id.* at Doc. 265. In doing so, the state court rejected Mr. Pickard's arguments—many of which he attempts to revive in this federal lawsuit—and denied all of his counterclaims alleging wrongdoing by APP. *See id.* Mr. Pickard appealed to the Supreme Court of Alabama. *See id.* at Doc. 334. Because of a procedural defect, the Supreme Court of Alabama returned the case to the lower court, *see id.*, where the case proceeded further and is now on appeal once again, *see id.* at Doc. 379 (unpublished memorandum decision from the Alabama Court of Civil Appeals affirming the trial court's decision).

Not until late 2023, after he received the adverse ruling in the state court, did Mr. Pickard bring this lawsuit in federal court. *See* Doc. 1. Though the denial of Mr. Pickard's TRO has been appealed to the Eleventh Circuit, Doc. 22, this case is still at a substantially earlier stage than the state-court proceedings. There have been no rulings on the merits nor on Mr. Pickard's unusually voluminous filings. This factor heavily weighs in favor of abstention. The state court litigation has not reached a final conclusion, and the court is not inclined to intervene in that ongoing litigation to allow Mr. Pickard to revive his claims after litigating them all the way to the Supreme Court of Alabama, particularly in light of the early stage of this litigation.

*Fifth*, "[t]he fifth factor requires [courts] to determine whether federal law or state law provides the rule of decision." *Jackson-Platts*, 727 F.3d at 1143. "But this factor favors abstention only where the applicable state law is particularly complex or best left for state courts to resolve." *Id.* To determine whether Mr. Pickard's claims against APP in this case were compulsory counterclaims in his state court suit, the court would likely need to consider Alabama law. *See Graham v. Tasa Grp., Inc.*, No. 2:13-CV-00748-LSC, 2015 WL 875228, at *4 (N.D. Ala. Mar. 2, 2015) (discussing the unsettled question and concluding that "Supreme Court and Eleventh Circuit precedent appears to indicate that [state] law regarding compulsory counterclaims, and not the federal compulsory counterclaim rule, controls in this

situation"). Accordingly, the court cannot say that this factor weighs in favor of abstention.

*Sixth*, "[t]he sixth and final factor concerns whether the state court can adequately protect the parties' rights." *Jackson-Platts*, 727 F.3d at 1143. "[T]he fact that both forums are adequate to protect the parties' rights merely renders this factor neutral." *Id.* (cleaned up). "This factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights." *Id.* (cleaned up). This court cannot say that either of the fora are inadequate to protect the parties' rights, rendering this factor neutral.

Ultimately, this court will not allow Mr. Pickard, through "clever pleading," to relitigate the same evidence and same dispute that was resolved by the state court and taken all the way to the Alabama Supreme Court. Accordingly, this court abstains from deciding the claims against the APP Defendants in this case. The court need not address the arguments made by the parties in their motions to dismiss, or in the alternative, motions for summary judgment.

The Supreme Court has refrained from "decid[ing] whether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that *Colorado River* counsels in favor of deferring to a parallel state-court suit." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). But "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Id.* "When

a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Id.* "Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Id.* "Moreover, assuming that for some unexpected reason the state forum does turn out to be inadequate in some respect," the Court noted no "genuine difference between a stay and a dismissal." *Id.*

Because the court has nothing further to do in resolving any substantive part of Mr. Pickard's case against the APP Defendants, and because Mr. Pickard's remedies are the same should the state forum turn out to be inadequate, the court **DISMISSES** Mr. Pickard's claims against the APP Defendants.

### B. SPM Defendants

Mr. Pickard asserts two claims against the SPM Defendants: (1) collusion in violating the settlement agreements and (2) violations of 42 U.S.C. § 1983. *See* Doc. 24 at 36–41. The SPM Defendants argue that these claims are due to be dismissed for two reasons: (1) "Alabama law does not recognize a collusion/civil conspiracy claim based on breach of contract," and (2) the SPM Defendants "are not state actors such that they can be held liable under § 1983." Doc. 30 at 2.

*First*, Mr. Pickard does not allege viable claims against the SPM Defendants under 42 U.S.C. § 1983. Section 1983 "only provides for claims to redress State action." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). "Only in rare circumstances can a private party be viewed as a State actor for section 1983 purposes." *Id.* (cleaned up). "Indeed, to hold that private parties, such as the [SPM Defendants], are State actors, this court must conclude that one of the following three conditions is met:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ('State compulsion test');
>
> (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ('public function test'); or
>
> (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ('nexus/joint action test')."

*Id.* (cleaned up). In his complaint, Mr. Pickard does not allege that any of these are met. Rather, he continually asserts that "SPM Defendants are state actors as established in the related Cases." *See, e.g.*, Doc. 24 at 40; *id.* at 5 n.2 (explaining that the related cases are "2:19-cv-00885-ACA amplified by subsequent case no. 2:20-cv-00212-ACA").

Contrary to Mr. Pickard's assertion, the referenced cases do not establish that the SPM Defendants are state actors. *See Pickard v. Highland Manor, LTD*, Case

No. 2:20-cv-00212-ACA (N.D. Ala. 2020); *Pickard v. Wren*, Case No. 2:19-cv-00885-ACA (N.D. Ala. 2019).[5] In the referenced cases, the court never ruled on the merits of any of Mr. Pickard's claims. *See id.* After the court consolidated the cases, *Pickard v. Wren*, Case No. 2:19-cv-00885-ACA (N.D. Ala. 2019), Doc. 87, and referred the case to mediation, *id.* at Doc. 88, the parties reached a settlement and Mr. Pickard voluntarily dismissed his claims, *id.* at Doc. 96. The court's order stated nothing further than "[c]onsistent with the joint stipulation of dismissal . . . the court **DISMISSES** these consolidated cases **WITH PREJDICE**." *Id.* at Doc. 97. As such, Mr. Pickard's erroneous characterization of the court's ruling does not provide a basis for labeling the SPM Defendants state actors.

Mr. Pickard seems to think that because he sued "under Title 42 § 1983" in the previous case, which was settled, SPM was therefore established as a state actor in that case and all future cases. *See* Doc. 47 at 6. This is not so. It does not appear to this court that that court so found. Even if it did, any findings that court made are not binding on this court. *See Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022) ("[A] district court's decisions do not bind other district

---

[5] "[A] court may take notice of another court's order only for the limited purpose of recognizing the judicial act that the order represents or the subject matter of the litigation." *Jones*, 29 F.3d at 1553 (cleaned up). And "a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Id.* (cleaned up). Here, the court will take judicial notice of the prior court orders to evaluate Mr. Pickard's characterization of their effect on this litigation.

courts, other judges on the same court, or even the same judge in another case."). And other than his repeated references to the previous case, Mr. Pickard alleges in his complaint no basis for finding that the SPM Defendants are state actors. *See* Doc. 24.

In his opposition to the SPM Defendants' motion, Mr. Pickard repeats his incorrect assertion that "SPM Defendants **are state actors** as established in case no. 2:20-cv-00212 in this District Court." Doc. 47 at 6. He then spends more than twenty pages in his opposition arguing that the SPM Defendants are state actors under precedent from various courts, ranging from the Supreme Court to appellate briefs from state court cases. *See id.* at 23–44. Even were the court to consider Mr. Pickard's unsupported arguments as evidence of some interrelationship between the Department of Housing and Urban Development and the SPM Defendants, *but see Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013) ("Statements by counsel in briefs are not evidence . . . ." (cleaned up)), the court cannot conclude that the SPM Defendants meet the threshold to be labeled state actors. *See, e.g., Miller v. Hartwood Apartments, Ltd.*, 689 F.2d 1239, 1240, 1244 (5th Cir. 1982) (holding that there was no state actor where a private corporation owned and operated a Section 8 apartment complex where "[t]he apartments were constructed with a federally-financed insured loan," all of the tenants leased their apartments under Section 8, and the apartment complex received funding from the federal

government); *Eagle v. Viewpoint Invs. LLC*, No. 1:20-CV-237-AW-GRJ, No. 1:20-CV-236-RH-GRJ, 2022 WL 22227628, at *7 (N.D. Fla. Mar. 11, 2022) (collecting cases and explaining that "courts examining the question of whether a private entity that provides public housing and accepts federal vouchers constitutes a state actor under Section 1983 have generally held that it does not"). Accordingly, the court **DISMISSES** Mr. Pickard's claim against the SPM Defendants under 42 U.S.C. § 1983.

The remaining claim against the SPM Defendants for "Collusion in violating Settlement Agreement" appears to have two separate embedded claims. *See* Doc. 24 at 36–39. In this count, Mr. Pickard states that "Defendants have thus colluded to violate [his] rights under the FHA/FHAA by discriminating against him due to his handicap and disability in refusing to negotiate and refusing to sell the subject Property to him." *Id.* at 37–38. To the extent Mr. Pickard seeks to bring a separate claim against SPM for violating the FHA, it appears to be based on his allegation that SPM "divulged highly derogatory information regarding [his] tenancy and background . . . by which APP Defendants refused to negotiate and refused to sell the Property to [him]." *Id.* at 37.

This claim is deficient for two reasons. *First*, Mr. Pickard's claim against SPM is conclusory. Apart from his allegation that SPM divulged harmful information "in violation of the Settlement Agreement," Mr. Pickard provides no other basis for his

conclusory statement that "Defendants have thus colluded to violate [his] rights under the FHA/FHAA by discriminating against him due to his handicap and disability in refusing to negotiate and refusing to sell the subject Property to him." Doc. 24 at 37–38; *see Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023) ("We require more than labels and conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to survive a Rule 12(b)(6) motion. Further, where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (cleaned up)).

*Second*, and relatedly, Mr. Pickard's conclusory statements do not provide any basis to believe that the SPM Defendants violated the Fair Housing Act. The Fair Housing Act proscribes specific actions taken based on certain characteristics such as race, color, religion, sex, familial status, or national origin. *See* 42 U.S.C. § 3604. For instance, the Fair Housing Act makes it unlawful to refuse to sell or rent a dwelling based on delineated characteristics. *Id.* § 3604(a). It also prohibits discriminating against a person in "terms, conditions, or privileges of sale or rental of a dwelling" based on the delineated characteristics. *Id.* § 3604(b). The Fair Housing Act also prohibits certain advertisements and representations about housing availability. *Id.* §§ 3604(c)–(d). But Mr. Pickard's conclusory statements do not allege that the SPM Defendants did any of that prohibited conduct. *See* Doc. 24 at

36–39. To be sure, in this first count and in others, he adamantly asserts that the APP Defendants engaged in conduct prohibited under the FHA. *See id.*; *id.* at 41–47. But his sole allegation against the SPM Defendants is that the SPM Defendants provided "derogatory information regarding [his] tenancy and background," namely that "[Mr. Pickard] repeatedly ties up property owners and lives in the subject property without permission during the dispute." *Id.* at 37. Even if Mr. Pickard's allegation that the SPM Defendants did provide such information were true, Mr. Pickard has given the court no support for the proposition that the Fair Housing Act prohibits providing information about a person's litigation history, even if that disclosed history was then used by a different entity to allegedly violate the Fair Housing Act. Accordingly, the court **DISMISSES** Mr. Pickard's claim against the SPM Defendants for colluding to violate the Fair Housing Act. To the extent Mr. Pickard's First Claim for Relief alleges that the APP Defendants violated the Fair Housing Act through the refusal to negotiate and sell, these allegations are duplicated elsewhere in Mr. Pickard's counts against the APP Defendants. *See id.* at 41–47.

The other claim embedded in his first count is one based on collusion to violate the settlement agreement. As the court previously explained to Mr. Pickard, "settlement agreements are contracts and may be adjudicated in courts with jurisdiction over the contract." *Pickard v. Highland Manor, LTD*, Case No. 2:20-cv-00212-ACA (N.D. Ala. 2020), Doc. 27 at 1 (citing *Anago Franchising, Inc. v. Shaz,*

*LLC*, 677 F.3d 1272, 1281 (11th Cir. 2012)). Mr. Pickard has not established that this court has jurisdiction over the settlement agreement, which is a contract.

As courts of limited jurisdiction, federal courts may exercise jurisdiction only pursuant to the Article III of the United States Constitution or a statutory grant of authority to adjudicate the asserted claim. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (collecting cases). Specifically, "a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *See Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).

Mr. Pickard does not make explicit the law under which he is seeking to recover for the alleged breach of—or collusion in the breach of—the settlement agreement. *See* Doc. 24 at 36–37. To the extent he seeks to bring a claim for breaching the settlement agreement as a contract, the court does not have federal question jurisdiction, as such claims are creatures of state law. *See Kokkonen*, 511 U.S. at 382 ("[E]nforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction."). And to the extent that Mr. Pickard seeks to bring a civil conspiracy claim for colluding to violate the settlement agreement, that would also be governed by state law, which Mr. Pickard admits. *See* Doc. 47 at 17 ("Where facts establish an underlying actionable wrong, i.e. that

defendants in a cause of action have engaged in an unlawful conspiracy to breach contracts, and that this is the underlying actionable wrong in a cause of action, then a civil conspiracy based on breach of contract(s) is established under Alabama law.").

Further, Mr. Pickard has not shown that this court has diversity jurisdiction. Mr. Pickard is an Alabama resident. Doc. 24 at 8. He alleges that "Defendant SPM, upon all information and belief, is an Alabama Limited Liability Company." *Id.* at 9. Mr. Pickard provides no information about the citizenship of the LLC's members. *See id.* But "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). And "[t]he burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction . . . ." *Id.* (cleaned up). The court cannot conclude that complete diversity of jurisdiction exists between the parties. *See also* Doc. 24 at 12 (alleging that at least two of the individual SPM Defendants are Alabama residents).

And because the court dismissed all other claims in the case, the court declines to exercise any supplemental jurisdiction it may have over Mr. Pickard's claims against the SPM Defendants. *See* 28 U.S.C. § 1367(c).

The court emphasizes that though the parties filed various declarations, affidavits, and other evidence outside the pleadings, the court considers none of that

in ruling on the SPM Defendants' motion to dismiss. The court's decision is based solely on the governing law and an evaluation of the claims as pleaded in the complaint.

### C. Fictitious Parties

Mr. Pickard includes in his complaint "Fictitious Defendants A through M," who "are individuals or entities who caused or contributed to the injuries and damages complained of in this Complaint whose identities are unknown at present but will be supplied by amendment when ascertained." Doc. 24 at 17. Mr. Pickard's complaint makes no further mention of these defendants other than his general allegations against "defendants" collectively. *See* Doc. 24. He argues in his opposition to the SPM Defendants' motion that "[t]his case present particular challenges where it is likely that such additional defendants exist within and outside of the corporate/limited liability company structure of the SPM and APP Defendants who are difficult to identify at the time of the filing of the Complaint." Doc. 47 at 44–45.

"As a general matter, fictitious-party pleading is not permitted in federal court." *See Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). And the "limited exception to this rule," *id.*, does not apply here. Mr. Pickard's description of the defendants is not "so specific as to be at the very worst, surplusage." *See id.*

(cleaned up). Accordingly, Mr. Pickard's claims against the fictitious defendants are **DISMISSED**.

## IV.    CONCLUSION

For the foregoing reasons, the court **DISMISSES** Mr. Pickard's claims. The court also **DENIES AS MOOT** all pending motions.

**DONE** and **ORDERED** this 10th day of March, 2026.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE